CASE 8—PETITION ORDINARY—JUNE 18.

## Anderson v. Cincinnati Southern Railway.

APPEAL FROM PULASKI CIRCUIT COURT.

1. WATER-COURSES—RIGHTS OF RIPARIAN OWNERS.—Each proprietor of land through which water flows may use as much of it as is necessary for natural and domestic purposes, even if it be entirely consumed in the use, but he is limited as regards other purposes to a reasonable and proportionate use, which must not be such as to exclude others from a benefit to which they are equally entitled with himself.

2. SAME—DAMS.—One may build a dam across a stream flowing through his land without obtaining leave from the county court as provided by section 1, of chapter 77, General Statutes, but if in doing so he interferes with the previous supply to other riparian owners he must answer in damages.

A railroad company built a dam across a creek near a point at which its road crossed the creek, by which a reservoir was formed from which water was taken to a tank to supply its locomotives. Appellant, the owner of a mill located two miles below this dam, and erected under an order of the county court granting leave as provided by statute, brings this action to recover damages for the unlawful obstruction of the stream that hitherto supplied the power for the operation of his mill. *Held*—That if there is such a detention of the water as impedes or delays the running of plaintiff's mill he is enti-

Anderson v. Cincinnati Southern Railway,

tled to recover, the use by defendant not being an ordinary use of the water

3. SAME.—The fact that the defendant has leased its road and appurtenances to another does not deprive the plaintiff of his right of action against the defendant, the dam being the primary and continuing cause of the injury complained of.

4. SAME.—Under the leave granted by the county court, under the statute, to erect a mill or manufactory on a water-course in this State, the owner acquires a vested right which cannot lawfully be infringed by any other person or corporation, or taken or applied to public use without just compensation.

CURD & WADDELL AND PARKER & MAY FOR APPELLANT.

1. While all riparian proprietors have the right to use and consume the water of a natural stream as it flows past their land, this is as far as they can go, and they cannot stop or obstruct its natural flow, if they thereby interfere with the lawful use of the water by other proprietors, or inflict upon them a sensible injury. (Goddard on Easements, pp. 56, 296, 429 and 430; Angell on Water-Courses, secs. 93, 7th ed.)

What would be a reasonable use of water from one stream might be unreasonable from a smaller stream. (Angell on Water-Courses, secs. 94 and 95, and note 1.)

2. The right given by law to a railroad company to construct their road over a water-course does not carry with it the right to obstruct, divert or otherwise injure riparian proprietors or private rights. (Angell on Water-Courses, sec. 465b; Hickok v. Hine, 23 Ohio St., 523; Mayor of Baltimore v. Appold, 42 Md.)

If, however, it is found impracticable in any case to construct the road without obstructing the natural course of a stream of water, private interest must yield to public necessity, but compensation must be made to the sufferer. (Angell on Water-Courses, sec. 465d; March v. Portsmouth and Concord R. R., 19 N. H., 372; New Haven and North Hampton R. R. v. Hooker, 14 Conn., 146; Miss. Central R. R. Co. v. Mason, 51 Miss., 234.)

Therefore, the court erred in giving instruction No. 1, asked by appellee, and in refusing instruction No. 1 asked by appellant.

3. It was error to put the burden on appellant to show that the use of the water by appellee was *unreasonable*.

4. The measure of damages is the difference between the value of the premises before the injury happened and their value immediately after the injury. (Chase v. N. Y. Central R. R., 24 Barb. (N. Y.), 273; Sedgwick on Measure of Damages, 153, note 2; Easterbrook v. Erie R. R. Co., 51 Barb, 94; S. C., Am. Law Reg. (N. S.), vol. 8, pp. 177-8.)

5. The court erred in instructing the jury as to what was a *reasonable use* of the water by appellee. The necessity of the road is not the test of a reasonable use.

6. Although the riparian owner may own the land on a water-course and the bed of the stream, he has no right to erect a dam unless he obtains leave from the county court. (Gen. Stats., chap. 77.)

7. Appellant's mill was established under the authority of the statutes of the State, and his right to maintain it and to have the use of the natural flow of water to it had become a vested right in appellant long before any right accrued to appellee. (Gen. Stats., chapter 77.)

MORROW & NEWELL for appellee.

1. This action was brought to recover for a willful and intentional tort on the part of appellee, and there being no proof to sustain the allegations of the petition, a non-suit should have been 'ordered.

2. The appellee had the right to build a dam, and the only question was whether the dam built was unreasonably high, and whether there was an unreasonable use of the water. Appellee's rights are to be determined upon the same principles that would govern the rights of any other upper riparian *owner* as distinguished from the rights of a stranger. (Angell on Water-Courses, 7th ed., p. 198, note 2 and cases cited; *Ibid.*, p. 201, note 1; Embry v. Owen, 6 Exch., 350; Dumont v. Kellogg, 29 Mich., 420.)

　　*Some* injury to the mill below is for the most part unavoidable. (Merritt v. Brinckerhoft, 17 John., 306.)

　　Priority of occupation or appropriation gives to one proprietor no superior right to that of others. (Dumont v. Kellogg, 29 Mich., 420.)

3. The damages in a case like this are to be measured by the value of the use of the water to the party injured during the time he was deprived of it. (Pollitt v. Long, 58 Barb., 20; Merritt v. Brinckerhoft, 17 John., 306; Sedgwick on Damages, 6th ed., p. 155.)

　　But even if there was error in the instructions as to the measure of damages, the error was not prejudicial, as the jury did not reach that question.

　　Petition for rehearing filed by counsel for appellee is not in record

C. B. SIMRALL of counsel on same side.

JUDGE LEWIS delivered the opinion of the court.

Appellant is the owner of a water grist-mill, erected by him in 1872, on Pittman's creek, under an order of the Pulaski county court, granting the leave as provided by law in such cases. Across the same creek,

about one mile below its source, and two miles above appellant's mill, appellees, The Trustees of the Cincinnati Southern Railway, under charter granted by the General Assembly, subsequently built their road, and at the same time erected just above the railroad crossing a wooden dam four feet high, by which a reservoir was formed from which water was taken to a supply tank to be used in running their trains. But in 1877 or 1878, several years after the completion of their road, they erected in place of the wooden dam one built of stone, laid in cement, fourteen feet high, by which a reservoir was formed covering ten or eleven acres of land purchased by them of the riparian owner.

This action was brought by appellant against appellees for the alleged wrongful and unlawful obstruction and diversion, by reason of the stone dam, of water that hitherto flowed to and supplied the power for the operation of his mill, whereby, as he states, he has been injured, and to a great extent deprived of the use and enjoyment of said mill.

For their defense appellees answer: *First.* That since July, 1877, the railroad built by them, together with its franchises, appurtenances, etc., including the stone dam and reservoir, has been leased by them to the Cincinnati Railway Company and the Cincinnati, New Orleans and Texas Pacific Railway Company, and appellees have not since that time been in the possession or had control of the dam or reservoir, and are not, therefore, liable for the injury complained of. *Second.* They deny that the flow of water to appellant's mill has, to any extent, been prevented or delayed by the erection of the stone dam; and state that there is no

stream of water having channel or banks above the point where the dam is located, the reservoir being supplied with water by surface drainage at times of heavy rains, and that if the water which flows above the dam was unobstructed, it would not in any way affect appellant's mill, because the quantity during a portion of each year is so small as, even when added to that below, to be insufficient to run the mill, while during the residue of the time the quantity flowing below is sufficient to operate it as fully as if the dam had not been erected.

In our opinion, the first defense is not available.

The stone dam which it is alleged by appellant obstructs and diverts the natural and accustomed flow of water to his mill was erected by appellees as an appurtenance to their road, and being the primary and continuing cause of the injury complained of, there can be no question of his right to maintain this action against them for whatever damage has been unlawfully caused thereby. How far the lessees of the railroad may be liable, if at all, for taking the water already obstructed by the dam of appellees, and using it in operating their trains, is a question not now presented.

The right of every riparian owner to the enjoyment of a stream of running water in its natural state in flow, quantity, and quality is now well-established.

"Every proprietor of lands on the banks of streams has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it is wont to run, without diminution or alteration. No proprietor has a right to use the water to the prejudice of other proprietors above or below him, unless he has

a prior right to divert it, or a title to some exclusive enjoyment. He has no property in the water itself, but a simple usufruct while it passes along. *Aqua currit et debet currere ut currere solebat* is the language of the law. Though he may use the water while it runs over his land as an incident to the land, he can not unreasonably detain it or give it another direction, and he must return it to its ordinary channel when it leaves his estate. Without the consent of the adjoining proprietors, he can not divert or diminish the quantity of water which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above without a grant, or an uninterrupted enjoyment of twenty years (fifteen under our statute), which is evidence of it. This is the clear and settled general doctrine on the subject. All the difficulty that arises consists in its application." (2 Kent's Commentaries, 439.)

"The primary use of water is for natural and domestic purposes, and each proprietor of the land through which it flows may use as much of it as is necessary for those purposes, even if it be entirely consumed in the use ; but he is limited as regards other purposes to a reasonable and proportionate use, which must not be such as to exclude others from a benefit to which they are equally entitled with himself." (Wadsworth v. Tillotson, 15 Conn., 366 ; Evans v. Merriweather, 3 Scammon, 492 ; Arnold v. Foot, 12 Wend., 330 ; Davis v. Field, 12 Ver., 118 ; The Mayor of Philadelphia v. The Commissioners of Spring Garden, 7 Barr, 348.)

Water may, by a riparian owner, be withdrawn from a stream by ordinary means, or by artificial channels,

for the purpose of supplying the wants of men and animals, even to the extent of producing a material diminution in the force and volume of the current. But it can not be withdrawn for the purpose of irrigation, or for any other secondary and artificial purpose, except in such a reasonable and legitimate way as not to interfere unjustifiably with its general use. (Weston v. Alden, 7 Mass., 136; Colburn v. Richards, 13 Mass., 420; Cook v. Hull, 3 Pick., 279; Anthony v. Lapham, 5 Pick., 175; Evans v. Merriweather, 3 Scammon, 492.)

It has always been the policy in this State to encourage the building of water mills, and being considered of "public use," the exercise by the Legislature of the right of eminent domain in favor of them has never been called in question by the courts.

By section 1, chapter 77, General Statutes, which is substantially the same as section 1 of the act of 1797, continued in force by the Revised Statutes, it is provided, that "a person owning land on a water-course, the bed whereof belongs to him or the Commonwealth, and desiring to build on such land a grist-mill, or other mill or manufactory, useful to the public, and needing a dam in or across the water-course, or the raising of an established dam, or the cutting or enlarging of a canal above or below, may, by petition, in writing, filed in the county court of the county in which is situated the principal part of the land asked to be condemned, obtain therefrom a writ of *ad quod damnum* for the purpose of making the necessary condemnation, which shall embrace all the land demanded, whether lying in the same county or not."

But by subsequent sections of the same chapter it is

provided that such leave shall not be granted if thereby the mansion-house of any other than the applicant, or the out-houses, or any part of the yard, garden or orchard thereto belonging will be overflowed or taken, or that any other legally established mill will be materially injured thereby, or that the health of the neighbors will be injured. And that no person shall, by reason of such leave, draw the water from the mill-pond of another, existing at the time of the leave, or otherwise do any thing injurious to a vested right in any waterworks then existing on the water-course.

By virtue of the leave thus granted to erect a mill or manufactory on a water-course in this State, the owner acquires a vested right which cannot be lawfully infringed by any other person or corporation, or taken or applied to public use without just compensation being previously made.

By virtue of this statutory proceeding one constructing a dam, or intending to do so, may apply to the county court and obtain permission to do so by paying to the riparian proprietors, below and above the dam, such damages as they may likely sustain by reason of its construction, and this is a full protection to the applicant; but if no application is made to the county court, he still has the right to use his own land, and the water flowing over it, when not injuring others, as there is no restriction to be found in the statute, or elsewhere, by which the owner of the land where the stream runs is prohibited from building a dam when not interfering with the rights of others, but in doing so, if he so obstructs the natural flow of the water as to lessen the supply of his neighbor below, or to overflow his land

above, he must answer in damages. The owner is enti-
tled to the reasonable use of the water for natural and
domestic purposes ; but when he undertakes to divert the
course of the stream, or detain the water by means of a
dam, so as to prevent the previous supply to other ripa-
rian owners, he becomes a wrong-doer. In this case the
owner of the mill below has protected himself against
any claim for damages, by reason of the extraordinary
use of the water, by his application to the county court ;
but if he had obtained no such leave, and the running of
his mill obstructed the passage of the water and dimin-
ished its flow to the injury of those below, he would
have been liable for the injury. So, in this case, al-
though the railroad company owns the land, if the con-
struction of its dam and the use of the water dimin-
ished the flow to appellant's mill so as to affect the run-
ning of his mill, it must be regarded as an unreasonable
use of the water, because the use of the water for the
purpose of supplying the boilers on trains running on
the road is something more than the ordinary use for
domestic purposes. The use and detention of the water
on a large stream by means of a dam, for the purposes
of the railroad, might not be an unreasonable use, as
ordinarily there would be ample water left for all the
purposes of the riparian owners below ; yet, where the
stream is small, or even large, if the dam so obstructs
the water as to diminish the flow and lessen the capacity
of the water power below, it is an injury to the propri-
etor for which damages may be awarded. The question,
therefore, in this case, is not whether the railroad com-
pany made an unreasonable use of the water, but
whether its use for the purposes of the railroad injured

the mill below.  Where the water is detained by dams so as to run mills or supply locomotives, it is not an ordinary use of the water ; and while the company may not use more than is reasonably necessary for running its trains, nevertheless, if it injures the mill of the plaintiff he is entitled to recover.

The instruction that the company had the right to its reasonable use was therefore misleading.  The mere detention of the water or. the construction of the dam is not of itself the injury.  It must be such a detention as impedes, delays, or affects the running of plaintiff's mill.

If the use by the railroad causes no material injury to the owner, then no recovery can be had, and this is a question of fact for the jury to determine.

The judgment below is therefore reversed, and remanded for a new trial in conformity with this opinion.