Wallace v. City of Winfield.

---

No. 19,926.

CHARLES M. WALLACE, *Appellee,* v. THE CITY OF WINFIELD, *Appellant.*

SYLLABUS BY THE COURT.

1. WATERCOURSE—*Mill Dam—Rights Acquired by Prescription.* One who builds and maintains a dam may acquire flowage rights by prescription, and if the dam has been maintained for more than fifteen years a presumption of a grant or of consent by the upper riparian owners arises and gives the owner of the dam a right to its continued maintenance to the extent to which the right has been enjoyed for the period of prescription.

2. SAME—*Rights of City to Water as against a Lower Proprietor.* The fact that a city which has purchased a small tract of land on a stream and become a riparian owner is undertaking to supply the inhabitants of the city with water and has expended large sums of money in the erection of a water plant gives such owner no special or additional rights to the water of a stream as against a lower proprietor or one who has acquired prescriptive rights to the unobstructed flowage of the stream.

3. SAME—*City Has no Right to Take Water from Stream to Sell without Making Compensation.* A city which purchases land abutting on a stream acquires the right of a riparian owner, which is the reasonable use of water for domestic and other ordinary purposes incident to the land, but it does not thereby acquire the right to divert or take water from the stream for the purpose of selling it to the inhabitants of the city without making compensation to those who are thereby deprived of water rights.

4. SAME—*City May Not Obstruct the Flow and Diminish the Power of a Stream Belonging to a Mill Owner without Compensation to Him.* The

fact that a city has obtained the right to take water from a stream to supply its inhabitants at a point above the city does not give it the right to build a dam at a point considerably below the authorized intake in order to obtain water for the supply of its inhabitants, the place being within the mill pond of a lower proprietor of a mill and where the proposed dam would materially obstruct the flow and diminish the power which belongs to the mill and which would operate as a substantial interference with the water rights acquired by the mill owner without making compensation to him.

5. SAME—*Findings Entitle Mill Owner to an Injunction to Prevent the Erection of a Proposed Dam.* The findings of the court that the proposed obstruction of a stream by the defendant would be a substantial infringement of the plaintiff's water rights are found to be warranted by the facts, and under the circumstances of the case the plaintiff is held to be entitled to the remedy of injunction to prevent the erection of the proposed dam.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed June 12, 1915. Affirmed.

*J. A. McDermott,* city attorney, *G. H. Buckman,* and *S. C. Bloss,* both of Winfield, for the appellant.

*W. P. Hackney, L. D. Moore,* both of Winfield, and *J. T. Lafferty,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action begun by Charles M. Wallace against the city of Winfield to enjoin the construction of a dam across the Walnut river. The injunction was granted, and the city appeals.

Bordering upon the Walnut river is a tract of land known as the fair-ground tract, owned by the city of Winfield, and upon which is located the city's water plant. Up the river from this tract are the Baden mills, and a dam across the river; below it is the Tunnel mill, owned by plaintiff, with another dam across the river. In 1883 the city of Winfield condemned the right to take all necessary water from the river at a point above the Baden mills. About 1910 the city moved its intake from the Baden mill pond to its present location, opposite the fair-ground tract, and on August 18, 1914, obtained a right from a landowner to erect a dam across the Walnut river about one-half mile below its water plant and about 7836 feet up the river from the dam owned by plaintiff, and 6000 feet above his

Wallace v. City of Winfield.

mill. The proposed height of this dam, it was shown, was about seven-tenths of a foot lower than the height of plaintiff's dam and about nine feet lower than the Baden dam. The plaintiff's mill was operated by water power except when the water in the river was so low as to furnish insufficient power, and then the mill was operated by steam power. During parts of 1913 and 1914 the water in the river was very low, and the city did not get sufficient water for the demand, except when the Baden dam was opened and the water permitted to flow down. Plaintiff alleged that the proposed dam would reduce the volume of water flowing in the river, interfere with its usual fall, and thereby destroy, to a large extent, his use of the water for milling purposes, to his great damage, and he therefore asked that the construction of the dam be enjoined. The trial court made detailed findings of fact and concluded that the proposed dam would be a substantial injury to the rights of plaintiff, and hence a judgment of injunction was entered.

The defendant appeals and insists that upon the findings made the defendant was entitled to judgment in its favor. It is contended, first, that the city was entitled to take all the water from the river which is needed to supply the people of the city, and that the plaintiff suffered no injury by the moving of the intake; second, that the construction of the proposed dam would not be an unreasonable interference with the natural flow of the river; and third, that the failure of the plaintiff to maintain his dam barred him from claiming any equitable relief.

The city acquired the right to take water for municipal purposes at a point above the Baden dam, but the location of the proposed dam is 6634 feet below that dam. No proceedings have been taken by the defendant to obtain the right to construct a dam or to obstruct the flow of the stream except to purchase land on each side of the river at the site of the proposed dam. Near this site the defendant at great expense built its pumping station and filtration plant, and this appears to have been done when the plaintiff was acting as mayor of defendant city, and with his consent and approval. The defendant, as we have seen, had acquired the right to take all the water it needed at a point above the Baden dam, and it appears that there were no tributaries between that intake and the point chosen for the erection of the proposed dam. But

while it may make little difference, so far as the quantity of water is concerned, whether the water is taken out above or below the Baden dam, it is insisted that the defendant never had condemned or obtained any right to take water below that dam, and besides, it had never acquired a right to obstruct the flow of the stream or to impound the water at the site of the proposed dam, which was practically within the plaintiff's mill pond, or reservoir. The court found that in ordinary stages of water the plaintiff's dam, when closed, backed the water up to the present intake of the defendant, which is one-half mile farther up the river than the site of the proposed dam. The dam owned by plaintiff has been in existence for about forty years, and has been maintained at its present height for about twenty-five years. It does not appear that the plaintiff or any of his predecessors acquired any rights as against riparian owners by purchase or condemnation. There was litigation in 1894 between the owners of the plaintiff's mill dam and a riparian owner, in which the character and height of the dam was determined and fixed, and the owners of the dam are perpetually enjoined from changing the height of the same. As the dam has been maintained at this height for more than fifteen years a presumption of a grant or of consent by the upper riparian owners arises and gives the owner of the dam a right to its continued maintenance to the extent to which the right has been enjoyed for the period of prescription. (*Whitehair v. Brown,* 80 Kan. 297, 102 Pac. 783.) At the site of the proposed dam the defendant was a riparian owner by virtue of the purchase of land on each side of the river, and while a riparian owner has the right to a reasonable use of the water for domestic and agricultural purposes the city is not entitled to divert or take water from the river for the purpose of selling it to inhabitants of the city or to other persons remote from the stream. (*City of Emporia v. Soden,* 25 Kan. 588, 37 Am. Rep. 265; *Stein v. Burden,* 24 Ala. 130, 60 Am. Dec. 453; *Lord v. Water Co.,* 135 Pa. St. 122, 19 Atl. 1007, 8 L. R. A. 202, 20 Am. St. Rep. 864; *City of Battle Creek v. Resort Ass'n,* 181 Mich. 241, 148 N. W. 441.) The duty of supplying the inhabitants of the defendant city with water is imperative, and the necessity for obtaining water at this place may be pressing, but the city is vested with the power of eminent domain and may obtain the right to

take water from the stream by condemnation and the payment of compensation to those who may be injured or from whom any property rights may be taken. In the Soden case the owner of the mill and dam had acquired the rights of the riparian owners for some distance up the stream, and had been in the undisturbed possession of the same for nineteen years. Without condemnation of the water privileges or compensation to the mill owner the city undertook to take water from the mill pond, claiming that it was a riparian owner, that it represented all the inhabitants of the city and was entitled to take as much water as was needed by all of them for domestic purposes. The court held that the city could not be considered a riparian owner in a representative way. It was said:

"The city, as a corporation, may own land on the banks, and thus in one sense be a riparian owner. But this does not make each citizen a riparian owner. And the corporation is not taking the water for its own domestic purposes; it is not an individual; it has no natural wants; it is not taking for its own use, but to supply a multitude of individuals; it takes to sell." (p. 607.)

The conclusion of the court was that the proposed action of the city impaired the flow of the water and diminished the power which belonged to the mill owner and therefore the city was enjoined from interfering with his water rights, holding that before the city can interfere with the water power it must make compensation.

As the plaintiff and his predecessors in title had acquired and held the water-power rights up to and above the place in question by user and the city was proposing to obstruct the flow and to divert and use the water in excess of any right which it had as a riparian owner or otherwise the question arises, Is the plaintiff entitled to the interposition of a court of equity? If the proposed act would materially obstruct the flow of the water and diminish the power at the plaintiff's mill he is entitled to the remedy of injunction. The trial court found upon sufficient testimony that for a number of years the defendant had been taking from the river from a million and a quarter to a million and a third gallons of water a day, and that during droughty periods it had been taking as much as three million gallons a day, and, further, that the building of

the proposed dam to a height of three feet would result in impounding at one time about thirty million gallons of water. It was further found that:

"The height of water over the proposed dam when the Baden wheels are running at low stage would be about 1¼ feet, and when the city was withdrawing for its use substantially 1¼ million gallons per day there would be withdrawn substantially .22 H. P."

There was a further finding that plaintiff's mill was operated partly by steam and partly by water power. Two wheels were operated by water power, one for the manufacture of flour, and a smaller one of meal. The large wheel had a capacity of from seventy-five to eighty horsepower, and the smaller one about thirty-five horsepower. At low stages of the river and when there was water running there was power sufficient to operate the smaller wheel, but steam power was required to the extent of about one-third or one-half of the power necessary to operate the flour mill connected with the large wheel. The court expressly found that the water power afforded by the plaintiff's dam had a substantial value as a water power for the purposes of running the mill. The court therefore decided that the proposed dam would be a substantial interference and injury to the rights of the plaintiff and that he was entitled to the remedy of injunction. While the volume of water taken is not very large there would be the added interference of a dam proposed to be erected in the plaintiff's mill pond which would unreasonably detain the flow and would substantially interfere with and diminish his water power. At this place the defendant had, of course, the rights of a riparian owner and was entitled to use the water for the ordinary purposes, but not to such an extent as to unreasonably diminish its quantity and pen up its flow without compensation to the plaintiff. In the building of a dam the defendant would be exceeding its rights and materially infringing the rights of the plaintiff, and, as has been said:

"A riparian owner has no right, in order to facilitate his use of the waters of a watercourse, unreasonably to detain them by means of dams and reservoirs." (30 A. & E. Encycl. of L. 372.)

(See, also, Notes, 41 L. R. A. 737; 59 L. R. A. 817; *Anderson v. Cincinnati Southern Railway*, 86 Ky. 44, 5 S. W. 49, 9 Am. St. Rep. 263; 40 Cyc. 571.)

Under the rule of the Soden case (25 Kan. 588), the mere

fact that a riparian owner is undertaking to supply the inhabitants of a city with water and has expended large sums of money in the erection of a water plant does not confer any special or additional right to the water of the stream as against a lower proprietor or one who has acquired prescriptive rights to the unobstructed flowage of the stream.

The plaintiff did not lose his rights by the fact that the gates at the Tunnel mill had been open for a short time. It appears that shortly before this action was brought the gates were opened by parties other than the plaintiff, and that although plaintiff learned of the removal he took no steps to restore them but had plans for new gates. He further stated that he did not intend to do anything towards closing the tunnel until he learned what his rights in the premises are. There has been litigation between the owners of the Tunnel mill and as a result the mill had not been operated for three years before the bringing of this action, but the temporary cessation of operation did not deprive plaintiff of the water rights acquired under the law. Attention has been called to the fact that the mill-dam act provides that if a person having obtained the right to erect and maintain a dam builds the same which is thereafter destroyed and that if he does not begin to rebuild it within one year after destruction and finish it in three years after that time, or if having erected a mill shall fail to keep it in operation for two years at any one time, he shall forfeit the rights acquired under the provisions of the act. (Gen. Stat. 1909, § 4974.) This provision, however, has no application to the case in hand as the plaintiff appears not to have acquired any rights by virtue of the provisions of the mill-dam act. Prescriptive rights are not deemed to be abandoned or lost by temporary nonuser, and it has been held that such a right is not lost by nonuser for less than the prescriptive period. (Note, 59 L. R. A. 845.)

Under the findings of the court, which appear to be sustained by sufficient testimony, the proposed dam would be a substantial interference with the rights of the plaintiff, and in view of the character of the proposed obstruction and that it would necessarily entail continuous damages necessitating frequent and almost continuous litigation, injunction is a proper remedy.

The judgment of the district court is affirmed.