Wallace v. City of Winfield.

---

No. 20,543.

CHARLES M. WALLACE, *Appellant*, v. THE CITY OF WINFIELD, *Appellee*.

SYLLABUS BY THE COURT.

1. WATERS AND WATERCOURSES—*Flowing Stream—Water Power Rights Diversion of Water—Measure of Damages.* One who has obtained water power rights in a flowing stream has no ownership in the water itself but only a right to its use, and if the water is diverted from the stream he may recover damages for any loss or injury actually sustained but is not entitled to recover the value of the water diverted.

2. EMINENT DOMAIN—*Water—City of Second Class—Second Exercise of Power—Bona Fides.* A city of the second class is authorized to exercise the right of eminent domain in order to supply its inhabitants with water, and the mere fact that it had previously condemned property for that purpose did not exhaust the power nor preclude it from

afterwards condemning property at the same or another location, if the officers to whom the power is entrusted determine in good faith that the public interest requires another exercise of the power.

Appeal from Cowley district court; ALLISON T. AYERS, judge *pro tem.* Opinion filed July 8, 1916. Affirmed.

*W. P. Hackney, L. D. Moore,* both of Winfield, and *J. T. Lafferty,* of Kansas City, Mo., for the appellant.

*A. M. Jackson, A. L. Noble, S. C. Bloss,* and *J. A. McDermott,* all of Winfield, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action Charles M. Wallace, the owner of a mill and mill dam on the Walnut river, seeks to recover the sum of $49,500 for water pumped and taken from his mill pond by the city of Winfield and sold by it to the inhabitants of the city. He also seeks to enjoin the defendant from going on with certain condemnation proceedings, the building of a dam and the appropriation of the water for the use of the people of the city.

To supply water to the city and its inhabitants the defendant has erected a plant upon a piece of land known as the Fair Grounds tract bordering upon the Walnut river. Up the river from this tract are the Baden mill and dam, and below it the Tunnel mill and dam, the latter being the plaintiff's property. The defendant had originally pumped its water from an intake above the Baden dam where a right had been condemned in 1883 to take all the water necessary to supply the city. After establishing its plant on the fair grounds tract the defendant abandoned its intake above the Baden dam, and since then has secured its supply from an intake below that dam and within what is called the plaintiff's mill pond. Some time prior to August 5, 1914, the defendant undertook to erect a dam across the river near the lower intake, having secured a right to do so from a landowner adjacent to the river. In an action brought at that time by the plaintiff the construction of the dam was enjoined by the district court and its judgment was affirmed by this court. (*Wallace v. City of Winfield,* 96 Kan. 35, 149 Pac. 693.) The facts relating to the water rights in the river ac-

quired by the plaintiff and the effect which the proposed dam would have upon his property are set forth in that case, and upon these facts it was determined that the building of the dam by the defendant would materially infringe upon the rights of the plaintiff, and that this could not be done without condemnation of the water privileges and the payment of compensation to the plaintiff. The defendant then proceeded to condemn a right to erect a dam and take water at the point named, which is near the waterworks plant, in order to supply water to the municipality and its inhabitants. Condemnation was effected before the board of county commissioners which made an award of compensation to the plaintiff. He objected to the condemnation but did not perfect an appeal from the award made by the board. Subsequently he brought this action, and in the first count alleged that he was the owner of the water privileges and of all the water in the river between the Baden dam and the Tunnel dam; that the defendant had taken water there without right from October, 1913, to October, 1915, amounting to 990,000,000 gallons, and had sold it at seven cents per thousand gallons, aggregating an amount and value of $69,300. The plaintiff credited the account to the extent of two cents per thousand gallons for the expense of pumping and distributing the water and asked judgment for the remaining sum of $49,500 as the value of the water appropriated by the defendant.

The defendant moved to strike out of the first count the averments to the effect that the plaintiff was the owner of the water which flowed along the river between the two dams and which alleged a right to the value of the water taken by the defendant, and also the averments relating to the money received by the defendant from the sale of the water to the people of the city; and this motion the court sustained. The averments stricken proceed on the theory that a recovery may be had for the value of the water taken from the river by the defendant rather than for the loss or injury which he sustained by being deprived of the use of the water taken by the defendant. It was determined in *Wallace v. City of Winfield*, supra, that the plaintiff had acquired water power rights in the river and that the taking of water at the lower intake was a material interference with the plaintiff's rights by not only

diminishing the quantity but depriving him of the use of the water to which he was entitled under rights previously acquired. For this interference and deprivation he is entitled to reasonable damages to the extent of the injury sustained by him. However, he had no title to the water in the river, no right to sell it, nor to recover the sale price of water taken from the river. He had not withdrawn the water from the river and reduced it to possession, nor had he taken any steps which had changed its character and given him a property right in it.

In *City of Syracuse v. Stacey,* 169 N. Y. 231, 62 N. E. 354, the court said:

"Water, when reduced to possession, is property, and it may be bought and sold and have a market value, but it must be in actual possession, subject to control and management. Running water in natural streams is not property and never was." (p. 245.)

Since the plaintiff had acquired no ownership in the water the extent of his recovery is the injury to the use occasioned by the defendant. Unless he has suffered injury from the interference with his rights and the deprivation of the use to which he was entitled, no compensatory damages can be recovered. He is entitled to nominal damages for the illegal diversion of the water and also any actual damages proven. (*Clark v. Allaman,* 71 Kan. 206, 80 Pac. 571, 70 L. R. A. 971; *Price v. High Shoals Mfg. Co.,* 132 Ga. 246, 64 S. E. 87, 22 L. R. A., n. s., 684; *Elgin Hydraulic Co. v. City of Elgin,* 194 Ill. 476, 62 N. E. 929; *Crawford Co. v. Hathaway,* 67 Neb. 325, 93 N. W. 781, 60 L. R. A. 889; *Gillis v. Chase,* 67 N. H. 161, 31 Atl. 18, 68 Am. St. Rep. 645; *Harris v. Railway Company,* 153 N. Car. 542, 69 S. E. 623, 31 L. R. A., n. s., 543, and Note; 40 Cyc. 552; 2 Farnham's Waters and Water Rights, § 462; Gould on Waters, 3d ed., § 204.) The motion to strike was therefore properly allowed. Whether or not the remaining allegations are sufficient to entitle the plaintiff to recover damages is not raised by the motion. In the judgment it is recited that no request for permission to amend the petition was made, although the defendant offered to submit to a judgment against it for nominal damages.

In the second count of the petition, to which a demurrer was sustained, the principal legal question presented for review

is whether, having previously condemned a right to take water from the river above the Baden dam, the defendant had exhausted the power delegated to it to obtain water privileges at the lower point on the river. In the earlier case between these parties, the court, after speaking of the former condemnation and the infringement of the plaintiff's right by the attempt to take water at the lower location, said:

"The duty of supplying the inhabitants of the defendant city with water is imperative, and the necessity for obtaining water at this place may be pressing, but the city is vested with the power of eminent domain and may obtain the right to take water from the stream by condemnation and the payment of compensation to those who may be injured or from whom any property rights may be taken." (*Wallace v. City of Winfield,* 96 Kan. 35, 38, 149 Pac. 693.)

The legislature has determined the necessity and expediency of condemning a right to take water for a water plant and delegated to cities of the second class the exercise of that power in order that they may supply their inhabitants with water. (Gen. Stat. 1909, § 1405, as amended by Laws 1911, ch. 116.) The necessity for the appropriation of the right to take water is to be determined by the municipal authorities and the board of county commissioners before which the proceedings are had. It is conceded that the use is a public one, and the courts have no authority to control the reasonable exercise of the power by the legislature directly or by the officers to whom it has been delegated.

In *Irrigation Co. v. Klein,* 63 Kan. 484, 65 Pac. 684, it was said:

"Courts may not interfere to limit or control the discretion of the lawmaking power as to the character, quality, method or extent of the exercise of the power of eminent domain by a private person or corporation engaged in the promotion of a public use, when once it has been determined that such use is a public one." (p. 488; 15 Cyc. 629, 634; Note, 22 L. R. A., n. s., 71.)

Has the defendant exhausted the right to condemn a water privilege because it exercised the power in 1883 at a point more than a mile above the new location? All property is held subject to the right of eminent domain whenever the public necessity requires it. It is a continuous sovereign right which can not be extinguished. The fact that the power delegated by the legislature to the defendant was exercised thirty-three

years ago does not argue that the property deemed necessary for public use at that time meets the requirements of the present time, nor does it exhaust the power where those entrusted with its exercise determine that additional or other property is necessary to the public convenience or welfare. It was expressly decided in *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 26 Kan. 669, that the right of eminent domain was not exhausted by a single exercise of the power and that a previous condemnation of ground for depots and sidetracks did not preclude a second condemnation where the company determined that more land and enlarged facilities were necessary to the discharge of its duties to the public. In a later case, where land was condemned for shop grounds and terminal facilities and a second condemnation for a like purpose at the same station was made within a year, it was contended that the second proceeding was invalid. The court, however, held that it was a continuing power which might be exercised whenever it was deemed to be necessary. (*Smith v. Railway Co.*, 90 Kan. 757, 136 Pac. 253.) The power to condemn is given to the city in general terms, and nothing in the language of the act indicates a legislative purpose to limit the exercise of the power to a single instance or to one set of proceedings. It is a right which the legislature or other agency to which the power is entrusted can not bargain away so as to prevent its use whenever a necessity arises.

In Cooley's Constitutional Limitations, 6th ed., p. 644, it is said:

"When the existence of a particular power in the government is recognized on the ground of necessity, no delegation of the legislative power by the people can be held to vest authority in the department which holds it in trust, to bargain away such power, or to so tie up the hands of the government as to preclude its repeated exercise, as often and under such circumstances as the needs of the government may require. For if this were otherwise, the authority to make laws for the government and welfare of the State might be so exercised, in strict conformity with its constitution, as at length to preclude the State performing its ordinary and essential functions, and the agent chosen to govern the State might put an end to the State itself. It must follow that any legislative bargain in restraint of complete, continuous, and repeated exercise of the right of eminent domain is unwarranted and void."

(See, also, *C. & E. I. R. R. Co. v. The People*, 222 Ill. 396, 78 N. E. 784; *C. & N. W. Ry. Co. v. Mechanics' Inst.*, 239 Ill.

197, 87 N. E. 933; *The St. L. H. & K. C. R'y Co. v. Hannibal Union Depot Co.*, 125 Mo. 82, 28 S. W. 483; *Kan. & Tex. Coal R'y v. Northwestern Coal & Mining Co.*, 161 Mo. 288, 61 S. W. 684, 51 L. R. A. 936, 84 Am. St. Rep. 717; *Johnson v. Utica Water Works Company*, 67 Barb. [N. Y. Supr. Ct.] 415.)

The facilities at the old location may be wholly inadequate at the present time and the conditions that exist there may be such as to demand a change of intake. The city is growing, and it is easy to understand that a plant deemed to be sufficient for the people a third of a century ago would not be sufficient to meet the demands for the greater population or to subserve the present public interest. It devolved upon the officers entrusted with the delegated power and discretion to determine what the public interest required, the expediency of making the change, the suitableness of the location for the new intake; and having decided it in good faith, the court can not substitute its judgment for theirs. The distance between the two locations shows that the second condemnation is not the mere taking of rights already possessed by the defendant, and under the petition it can not be held that the necessity for the condemnation did not exist nor that the power was fraudulently or illegally exercised.

The judgment of the district court is affirmed.