No. 32,424

THE STATE HIGHWAY COMMISSION, *Appellant*, v. H. C. FORD et al., *Appellees*.

(46 P. 2d 849)

Opinion filed July 6, 1935.

*Wint Smith*, attorney for the state highway commission, *Henry E. Martz* and *Robert Osborn*, assistant attorneys for the state highway commission, for the appellant.

*S. A. Gard*, of Iola, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was a condemnation proceeding. The property owners, hereinafter called defendants, answered that the condemnor, hereinafter called plaintiff, was not seeking to take the land for any purpose for which it was authorized to exercise the right of eminent domain, and asked that it be enjoined. Evidence was taken on the application for a temporary injunction, which was allowed. Later, by stipulation, the same evidence was used on the hearing for a permanent injunction, which was allowed. The plaintiff has appealed.

No question of procedure is presented for our determination. The question presented is whether there was substantial evidence to sustain the judgment of the trial court.

Scale. 1"=200'

N.E.¼ Sec.10, T25 S, R18E

.74 Acres additional Land

Old Borrow Pit

.92'

60'

60'

Additional Land Purchased

.51 Acres additional Land.

Old Borrow Pit

Center of Highway

R.R.

A.T. & S.F.

SE.¼, Sec.10, T25S, R18E

60'

60'

L Additional Land Purchased

.92'

PLAT SHOWING ORIGINAL
RIGHT OF WAY AND WIDENING
NECESSARY FOR ROADSIDE IMPROVEMENT

Our statute (R. S. 1933 Supp. 68-413), so far as here pertinent, reads:

"That the state highway commission . . . may acquire title . . . by the exercise of the right of eminent domain, to any lands . . . necessary for the construction, improvement, reconstruction, maintenance, or drainage of the state highway system. . . ."

The accompanying plat will aid us to understand the controversy. U. S. highway No. 73, a part of our state highway system, runs along the east side of the northeast quarter of section 10, township 25, range 18, east, and at the southeast corner thereof turns west for half a mile or more. It crosses the railroad about midway of this half-mile stretch. The highway is improved with an eighteen-foot pavement. The original right of way was sixty feet wide. A viaduct was built over the railroad, the material for the approaches being taken from borrow pits north of the highway. At the point where it crosses the railroad the highway right of way had been widened to 120 feet and tapers to the sixty-foot width as it approaches the southeast and the southwest corners of the quarter section. The highway commission, in a regular meeting October 22, 1934, found that in order to establish, lay out, open, construct, improve, maintain and drain this half mile of highway it was necessary to widen the highway to 120 feet for the entire half mile and to acquire land on the north and south necessary for that purpose. It succeeded in purchasing the necessary tracts on the south side. Being unable to purchase the two small tracts on the north side of the highway, which are shaded on the plat, it brought this proceeding on October 30, 1934. Plaintiff filed its petition, reciting the necessary facts, in the district court of Allen county, for the condemnation of the two small parcels of land. The court examined the petition and found "the petitioner has the power of eminent domain and that the lands described in said petition are necessary to petitioner's lawful corporate purposes as set out in the petition." Appraisers were appointed and the landowners notified.

On November 3, 1934, the landowners, as defendants, filed an answer to the petition in which they denied "the right and power" of plaintiff to condemn the land for the purposes named in the petition for the reason that the land "is not necessary, in any sense whatever, for the benefit or improvement of the highway." They further alleged that the strip of land sought to be taken is not intended by plaintiff to be used for the purpose of constructing, im-

proving, maintaining, or draining the highway, but "is by it being sought for the purpose of creating what they term a 'park,' some twenty-seven to thirty feet wide between the highway" and the land of defendants, and would cut off ingress and egress and prevent the land from being used as homes or divided into small tracts, and that the same would not be beneficial to the traveling public.

One of defendants, called as a witness in their behalf, testified the viaduct had been built six years; that the pavement was built in 1925, was eighteen feet wide; that the road is not so narrow as to obstruct travel; that there are ditches along the road; that the road is as complete there as it is along other strips of road; that he knew of no use that the land could be to plaintiff; that slabs are now being built from twenty to thirty-two feet wide; that there was nothing planted on the land in question, and part of the land is an old borrow pit, and that a representative of plaintiff attempted to buy the tracts of land in question for a park and had stakes placed on the land showing the location of trees. A right-of-way agent for plaintiff, called as a witness for defendants, testified plaintiff intended to use the road for roadside improvements, such as rounding back slopes and building up the shoulders; to seed them to grass, to prevent erosion, and to hold the soil from sliding; that in addition to building up the shoulders and back slopes, roadside improvements meant planting grass, shrubs and trees; that there is some room to improve now, but not enough; that the present shoulders are too narrow to allow parking off the slab, and roads with narrow shoulders are hard to maintain; that the United States bureau of public roads requires that government money be spent on not less than 100-foot rights of way, and must approve all projects; that the present shoulders are only four feet wide, and it is but six feet from the edge of the road to the ditch; and for these reasons the additional ground must be had; that the public will travel on the slab, not on the new land to be acquired. Plats prepared by plaintiff's engineers were offered in evidence. These show in part the improvements plaintiff contemplates making along the road, where grass is to be sown and shrubs and trees planted. A part of these are inside of the present right of way.

Plaintiff's witnesses gave testimony to the effect that 100 feet is now the minimum standard width for a highway right of way where improvements are to be made with federal funds; that the present shoulders of the road in question are too narrow, being only four

feet wide, and the slopes to the ditches are too steep; that the new right of way is needed to widen the shoulders, cut down back slopes to prevent accident, control vegetation at the curves so that the sight of drivers will not be obstructed by things growing too close to the road; that roadside improvements are to prevent erosion, act as snow fences, and improve the appearance of the road by erasing the scars of construction, and that the entrance ways to the land will remain open. There was further evidence that the blue prints which had been introduced in evidence showed only a part of the plans for improving the highway; that they related only to the seeding and planting; that the plan also includes the widening of shoulders, making better slopes to the ditches, and making other improvements conducive to safer travel.

This statement of the evidence discloses that there was no substantial evidence to sustain the finding of the trial court. It is true, one of the defendants, as a witness, testified that he had been approached by plaintiff's representative to buy the land for a "park," but there is no doubt from the evidence, a part of which was offered by defendants, that among the purposes plaintiff had in condemning the land was to make the highway more safe for travel by widening shoulders, making better grades to the ditches, seeding the slopes to prevent erosion, planting shrubbery, which would act to catch snow, as well as to improve the appearance of the project. It may be conceded, as is contended by defendants, that plaintiff was created as an arm of the state for the purpose of constructing, improving and maintaining highways, and not for the purpose of establishing a park system for the state. This does not mean, however, that its work must be done in the crudest possible manner. We never have heard it contended that our counties, cities, or the state, in constructing public buildings, were limited to the crudest construction possible for the use intended. The fact that bridges may be constructed, roads graded, and pavements laid thereon, and drainage constructed so as to appear sightly rather than crude, should be commended rather than condemned.

It will be noted that defendants attack only "the right and power" of plaintiff to make the proposed improvements. There is no charge of fraud or misconduct. Plaintiff, therefore, must be given credit for having acted in good faith. The legislature has placed in the state highway commission authority to determine, within certain limitations not here important, which portion of the state highway

should be improved, and in what manner. Necessarily the members of the commission have some discretion in those matters. When that discretion is exercised in good faith, and within the authority granted to it by law, courts should not interfere. (*Wallace v. City of Winfield,* 98 Kan. 651, 655, 159 Pac. 11; *Smouse v. Kansas City S. Rly. Co.,* 129 Kan. 176, 282 Pac. 183.) The fact that future needs were taken into account does not destroy the right and power to act. Indeed, we are all learning that many of our roads and bridges have been made too narrow, the turns too short, and that too little attention has been given to obstructions to view at corners. There is nothing in the record to sustain the view that plaintiff is not seeking to take the land for a public use. (*Howard v. Schwartz,* 77 Kan. 599, 607, 95 Pac. 559.)

The result is, the judgment of the court below must be reversed with directions to set aside the injunction and to proceed with the condemnation. It is so ordered.