## George Williams *versus* William Nelson *et al.*

Where a mill-owner has in fact exercised the right of keeping up his dam and flowing the land of another person, for a period of twenty years, without payment of damages and without any claim or assertion by the land-owner, of the right to damages, it is evidence of a right to flow without payment of damages, and will be a bar to such a claim.

Where a mill-owner has acquired a right to flow the land of another without payment of damages, the mere non-user of the mill for a period less than twenty years is not alone sufficient evidence of an abandonment of such right.

This was a complaint against the respondents, who were mill-owners, for flowing the complainant's land.

The parties stated a case.

The respondents proved, that their mill was built in 1783, that from that time until 1826, they had flowed the land of the complainant ; that from 1826 to 1835 the mill was not in operation, and all the valuable parts of it were removed, except the wheel and floom and a portion of the pillars ; that it was rebuilt in 1835 and again went into operation in 1836 ; and that no damage was ever paid by the owners of the mill, for such flowage, either to the complainant or to any person under whom he claimed.

The complainant relied upon the ground, that the respondents had abandoned their mill, and he offered to prove, that soon after 1826, they took away the frame and all the valuable parts of their mill, except the wheel, and that the wheel was not used in rebuilding ; and that some of the mill-owners declared, one of them in the presence of the complainant, that the mill would not again be put into operation ; and that in the interval of nine years between 1826 and 1835, the complainant had cut bushes on his land and improved the fresh meadow by turning portions of it into English grass, for mowing.

If the Court should be of opinion, that the facts proved by the respondents constituted a defence to the complaint, and that the evidence offered by the complainant was not a sufficient answer thereto, the complainant was to become nonsuit ; otherwise, a new trial was to be ordered.

*W. Baylies* and *Miller*, for the complainant, cited 3 Stark. on Evid. 989, 1201, 1217 ; *Staple* v. *Spring*, 10 Mass. R.

*Oct. 23d,*
*1838.*

72 ; *Coolidge* v. *Learned*, 8 Pick. 504 ; *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241 ; *Campbell* v. *Wilson*, 3 East, 301 ; *Ricard* v. *Williams*, 7 Wheaton, 105 ; *Knight* v. *Halsey*, 2 Bos. & Pul. 205 ; *Tinkham* v. *Arnold*, 3 Greenleaf, 120 ; *Bethum* v. *Turner*, 1 Greenleaf, 111 ; *Jackson* v. *Waters*, 12 Johns. R. 365 ; *Jackson* v. *Johnson*, 5 Cowen, 74 ; Matthews on Presumpt. Evid. 15 ; *Stowell* v. *Flagg*, 11 Mass. R. 364 ; *Lowell* v. *Spring*, 6 Mass. R. 398 ; *Hathorne* v. *Stinson*, 3 Fairfield, 183 ; *Stevens* v. *Morse*, 5 Greenleaf, 31 ; *Cooper* v. *Barber*, 3 Taunt. 99.

*Eddy* and *Coffin*, for the respondents, cited *St.* 1797, c. 63, § 2 ; 3 Kent's Com. 356, 359 ; *St.* 2 & 3 *Will.* 4, c. 71 ; 1 Chitty on Pract. 276 ; *Melvin* v. *Whiting*, 10 Pick. 298 ; *Kent* v. *Waite*, 10 Pick. 138 ; *Cook* v. *Hull*, 3 Pick. 269 ; *Bullen* v. *Runnels*, 2 N. Hamp. R. 255 ; *Tyler* v. *Wilkinson*, 4 Mason, 397.

SHAW C. J. delivered the opinion of the Court. This is a case upon the statute, for flowing, by the respondents' mill-dam ; and the question is, whether they can defend, by showing that they have kept up their mill and flowed the land in question more than forty years, without payment or claim for damages, on the part of the present complainant, or those under whom he claims. I state the question thus, because, from the general tenor of the report, and from the course of the argument, I so understand the case ; although construing the report literally, it is only, that the respondents, during the period mentioned, had paid no damages.

The Court are of opinion, that where a mill-owner and his predecessors have in fact enjoyed and exercised the right of keeping up his dam and flowing the land of another, for a period of twenty years, without payment of damages, and without any demand or claim of damages, or any assertion of the right to damages, it is evidence of a right to flow without payment of damages, and will be a bar to such claim.

It is very clear, that to raise a dam on one's own land, by which the water is set back on another's, without grant from the latter, would be a tort, for which case would lie. If such a dam is continued twenty years, without action, complaint or protest, on the part of the land-owner, it is evidence of a right ;

and as such right may be and often is acquired by grant, it is taken to be presumptive evidence of a grant, and may be so pleaded. *Campbell* v. *Wilson*, 3 East, 294 ; *Tyler* v. *Wilkinson*, 4 Mason, 397.

These principles are very clear and are constantly acted upon, where the rules of the common law apply. The question is, whether they are applicable to the case of flowing, as it is regulated in this Commonwealth by statute.

The statute still regards the flowing of one's lands, by the mill-dam of another, as a grievance and cause of damage ; but, on considerations of equity and public policy, it changes the mode of redress, by allowing the recovery of a gross sum, as a compensation for the perpetual easement, or an allowance of annual damages. The statute, strictly speaking, does not confer on the mill-owner the right to flow the land of another, it conveys no interest in the nature of a leasehold or easement, or otherwise, or any authority to make any actual use of the other's land, as a pond or reservoir. The owner may still embank against the water, if he pleases, and thus preserve his own land from being flowed. But the extent of the power conferred on the mill-owner by the statute is, to erect and maintain the dam on his own land, and keep up his head of water to his own best advantage, notwithstanding it may flow back on the land of others. And a mode of ascertaining and securing payment of the damages is provided.

But the statute clearly implies, that there may be a right on the part of mill-owners to flow the lands of others, without payment of damages, and provides for a mode of trying such right, considering it as a good bar to a complaint. *St.* 1797, *c.* 63, § 1, 2. It is treated as a substantive right, annexed to the mill, and belonging to its owners and occupants, into whose hands soever it may come. How can such a right be acquired ? One mode certainly is, by a grant on the part of the owner of the lands flowed. It is a servitude or easement to which the land may be perpetually subjected by its owner, as a right of way. It is equally visible and notorious and cannot deceive purchasers. It may be founded on a composition, satisfaction or release of damages. For as the right to erect the dam on one's own land is conferred by statute, and exists

independently of any act or consent of the owner of the land to be flowed, the right to flow it free of claims for damages, is not such an interest in the land as must be necessarily proved by deed. The claim of the land-owner is personal and for damages only ; and a satisfaction or release of those damages, would forever exempt the mill-owner from further claim. The statute power, and such satisfaction or release together, would constitute the right contemplated by the statute, to flow without payment of damages.

Perhaps such a right may be acquired in other ways. Suppose, for instance, a man owning a large tract of land, with a mill site, should erect a mill and dam, and flow back, but wholly on his own land. Suppose he should sell the mill and mill-site, with the privileges and appurtenances, but not including all the land flowed ; could he, against such a deed, claim of his grantee, damages for the flowing of the part of the land retained ? We are inclined to think he could not. But if he could not, privies in estate, coming in under him, could not. The owner of such a mill would therefore enjoy the right of flowing such land, without paying damage, and might use it as a bar to any complaint. It is a general and highly salutary rule of. law, that a right or easement which may be acquir ed by grant, may be acquired by long continued peaceable use and enjoyment, without contest or claim on the part of those, who would have an interest in denying or contesting it. For convenience, such continued, uninterrupted and uncontested use, is deemed evidence of a grant, from an owner of the land or person capable of granting. *Ricard* v. *Williams*, 7 Wheaton, 109.

I have not used the term "adverse," because it sometimes happens, that such a right may be acquired and such a grant presumed, where there is no actual use made of the land or property of another, and where, therefore, the owner could bring no action, during the time the privilege is used, which, after a certain length of time, is taken to be evidence of a grant. Of this nature are the enjoyment of light and air, in a house. The owner does no act upon the property of another, for which an action would lie ; he has a right to the light and air as they come to him over the land of another, and yet en-

joyment for twenty years gives a right and raises the presumption of a grant. *Moore* v. *Rawson*, 3 Barn. & Cressw. 332.

The case of a land-owner against a mill-owner is in some respects similar. The former could maintain no action, simply for erecting and keeping up the dam ; but he could file and prosecute his complaint for damages, or he could make his claim *in pais*, which, we think, would rebut the presumption of grant from mere use and enjoyment.

Perhaps there is another view in which the case may be considered. As these presumptions are made for the purpose of quieting titles and possessions, and preventing stale and obsolete claims, difficult of proof, the law will presume that act, whether grant, release or otherwise, which will best give security to long continued possessions, exemptions and other privileges. Courts have sometimes said, that they would presume a judgment, or an act of parliament, or whatever act might be necessary, to give security to a long, uninterrupted and undisputed enjoyment of a privilege. The law will presume a release or satisfaction of a mortgage or specialty debt, after twenty years. As there may in the outset, or at the first erection of a mill-dam, have been a release or satisfaction of all damages ever to arise from the flowing occasioned by such dam, why should not twenty years' enjoyment of the privilege, without claim of damage, upon the principles stated, be held to warrant a presumption of such satisfaction or release ?

All those considerations of expediency and public policy, as well as of law, on which the ordinary presumption is founded, in favor of actual enjoyment, and on which such enjoyment is deemed to be rightful, apply with great force and exactness to the case of flowing, without liability for damage. If such flowing were not originally rightful, on the mill-owner's own land or by permission of the land-owner, it seems not easily accounted for, that such owner should acquiesce for a long series of years, without any claim to damage. The inference therefore is, that his consent was given voluntarily, or purchased by some deed or other act, which is lost by lapse of time. There are undoubtedly many mill-dams, connected with ancient mills, which do now, to a certain extent, flow the

lands of others, but which have been held and enjoyed without claim of damage for long periods of years. It would now be difficult, if not impossible, in consequence of lapse of time, to prove the circumstances, under which such mill-dams were erected, or to prove the actual satisfaction or release of damages, even where there is no reasonable doubt, that such satisfaction was made. It would tend greatly to disturb and unsettle this class of rights, if the right to flow without claim of damages, could only be proved by deed or other formal express proof, and could not, like other rights of the same nature, be established by proof of long and undisturbed enjoyment on the one side, without objection, notice or claim of damage on the part of him, whose lands are affected and incumbered by such enjoyment.

This decision is opposed by no direct authority, except a decision of the very respectable Supreme Court of Maine, upon statutes nearly similar if not precisely the same. We feel the highest deference for the judicial decisions of that eminent court. But the case in question, *Tinkham* v. *Arnold*, 3 Greenleaf, 120, was new, and it was contrary to what we believe has long been considered as law in this Commonwealth, though never judicially decided ; and we think that the reasons given for the decision, are not such as to render it a conclusive authority. It goes upon the ground, that as the erecting and keeping up the dam was lawful and rightful, and made so by statute, neither the erecting nor continuance of it could be considered as proof of a grant, because they might be as well done without grant. It is true, that there would be no proof of the grant of the right to erect and keep up the dam. But the grant pleaded was of a grant of the right to erect and keep up the dam, and to flow the complainants' land, free of any claim for damages. This was relied on as a distinct, single and substantive right. The statute of 1714 did not confer this right, but only a right or power to erect and keep up the dam, paying damage. Therefore the enjoyment of the right free from all claim for damages, for forty years, was a right beyond that conferred by statute. Then the enjoyment of this entire right, beneficial to the mill-owner, and onerous to the land-owner, without claim for damages, could only be account-

ed for by the presumption of a grant, or by the satisfaction or release of damages, or other lawful act, inducing this acquiescence on the part of the land-owner. The case in Maine is founded on the implied admission, that the easement had a lawful origin and a lawful continuance. The case also goes on the supposition, that to found the presumption of a grant, the enjoyment must be adverse, and of such a nature that but for the presumed grant it would be unlawful. It may be deemed adverse, if, in any degree, it tend to impose any servitude or burden on the estate of another. But, in many cases, as the enjoyment of air and light by the owner of a house, the act is not unlawful without a grant by the owner of the land, over which they come ; yet the enjoyment of such privilege for a long time, without obstruction or notice on the part of the owner of the adjoining land, is proof of a right, and may raise the presumption of a grant.

The case of a mill-owner is, in some degree, similar. He may, by force of the statute, raise and maintain his dam, without grant or license of the owner of the land flowed by it ; but he cannot maintain it free from all claim for damage. If he does maintain it, twenty years, free of all claim for damage, we think it warrants the legal presumption of a grant or other lawful origin, of such right, and establishes the right upon the principle of presumed grant.

On the subject of abandonment, the Court are of opinion, that the mere non-user for nine years, proved in the present case, is not sufficient to extinguish the right which the defendants had acquired, of flowing the plaintiff's land without being liable to the payment of damages on that account. See *French v. Braintree Manuf. Co. post*, 216.

*Complaint dismissed*