Whitehair v. Brown.

---

JOHN WHITEHAIR *et al.* V. JACOB BROWN.

No. 15,897.

### SYLLABUS BY THE COURT.

1. EASEMENTS—*Prescriptive Right to Maintain a Dam—Interference by Riparian Landowners.* Where a dam across a stream has been maintained for fifteen years—the period of limitation for actions to determine an interest in real property—the right to its continued maintenance can not ordinarily be assailed by upper riparian landowners.

2. —————— *Grounds for Injunction—Unusual Overflow of Riparian Land.* Assuming that the right acquired by the maintenance of a dam for the period of limitation is not measured by its height, but by the actual extent to which it has caused the overflow of riparian lands, a showing made by a landowner that it has recently occasioned the temporary flooding of his property to a greater extent than ever before does not necessarily entitle him to an injunction against it. He must also show reasonable grounds for fearing the recurrence of the conditions occasioning his new injury with such frequency as seriously to affect the value of his land, or other considerations rendering his remedy at law inadequate.

3. —————— *Grounds for Injunction — Change of Use.* The prescriptive right acquired by the maintenance of a dam across a stream for the period of limitation is not affected by the purpose for which the water-power is employed. A riparian owner who by lapse of time has lost the right to object to a dam used to operate a flouring-mill can not enjoin its continuation as a means of providing power for an electric-light plant, unless upon a showing that such change operates to his prejudice by causing a greater obstruction to the flow.

Error from Dickinson district court; Oscar L. Moore, judge. Opinion filed June 5, 1909. Affirmed.

*Edward C. Little,* for the plaintiffs in error; *Pollock & Little,* of counsel.

*G. W. Hurd,* and *Arthur Hurd,* for the defendant in error.

The opinion of the court was delivered by

Mason, J.: In 1874 a dam was erected across the Smoky Hill river, upon land which was purchased by Jacob Brown in 1894. The dam was then partly washed out, but he rebuilt it and maintained it until 1904, when a part of it was again washed away. As he was preparing to rebuild it John Whitehair and other upper riparian landowners sought to enjoin him from doing so. Having been denied relief, they prosecute error.

The defendant claimed that the dam had been maintained continuously (except for the intervals due to the washouts) from the time of its construction, at the same height at which he proposed rebuilding it. The trial court so found, and of this the plaintiffs vigorously complain. There was very positive testimony to the contrary, and even that of the defendant's witnesses was somewhat indefinite and contradictory. But after a careful reading of the abstracts we can not say that there was an entire lack of evidence in support of the finding, and it must therefore stand.

The dam having been maintained for more than fifteen years, the owner's right to continue it became unassailable by those whose property had been encroached upon to the same extent during all of that time. (8 A. & E. Encycl. of L. 711; 1 High, Inj., 4th ed., § 799; 2 Farnham, Waters & Water Rights, § 558.) The fact that it had been out of repair and out of use for a considerable period at the time Brown purchased it is not important, for the prescriptive right had already been

perfected, and was not lost by an interruption in its exercise. (8 A. & E. Encycl. of L. 714; 2 Farnham, Waters & Water Rights, § 562.) The plaintiffs, however, showed that in 1903 and in 1904 a portion of their lands above the dam were overflowed for the first time, and they maintain that the injury thereby occasioned was new and not within the protection of the prescription. There is some conflict in the authorities as to the rule applicable in such a case. The majority of the decisions support the test thus formulated in volume 8 of the American and English Encyclopædia of Law, at page 713:

"The extent of the right to flow the lands of another acquired by prescription is not determined by the height of the structure of the dam, but is commensurate with the actual enjoyment of the easement, as evidenced by the extent to which the land of the owner of the servient tenement was habitually or usually flowed during the period of prescription."

As stated in a note to this text:

"In several states the rule has been laid down that a prescriptive right to flow lands by a dam is measured by the efficient height of the dam, in its ordinary action and operation, during the period of prescription."

(See, also, 2 Farnham, Waters & Water Rights, § 559c.)

The actual conflict may not be so great as might appear. In some of the cases the right to augment the actual flooding of lands has been denied because the increase was occasioned by some change in the character or use of the dam, by which it became a greater obstruction to the flow. To make such a change would obviously be equivalent to raising the dam—it would add to its efficient height—and would be wrongful on any theory. We need not determine whether, where a dam has been maintained in exactly the same condition for the period of limitation, and, by reason of climatic changes which enlarge the stream, the backwater spreads to land not formerly overflowed, a cause

of action accrues to the person thereby injured. This proceeding was not brought to recover damages, but to obtain an injunction. The record shows that in the flood of 1903 the plaintiffs' lands would have been overflowed to about the same extent had the dam not been in existence. The court did not find and the evidence did not compel the conclusion that the conditions occasioning the overflow of 1904 have become permanent, or that the lands covered for the first time in 1903 are likely to be subject to frequent or even occasional inundation in the future. To establish their right, to an injunction it was necessary for the plaintiffs to satisfy the court that there were reasonable grounds to fear the recurrence of the new injury with such frequency as seriously to affect the value of their lands, or that other considerations rendered their remedy at law inadequate. (See 2 Farnham, Waters & Water Rights, § 582a, and cases there cited.)

The dam was originally employed in the operation of a flour-mill, but its principal purpose at this time is to furnish power for an electric-light plant. The plaintiffs contend that the right acquired by the maintenance of the dam for the period of limitation is restricted by the use to which it is put during that time. Where the right to erect a mill-dam is acquired by condemnation no change of use is permissible. The power created can only be applied to the purposes stated in the petition by which such proceedings are begun, because the statute (Gen. Stat. 1901, ch. 66) so provides. There is no presumption, however, that the dam in question was erected under the mill-dam act. (*Vickery v. City of Providence,* 17 R. I. 651.) The right acquired by prescription does not depend upon the use to which a dam is put, and the riparian owners can make no complaint of a change in that respect, unless of course it is one which results in an increased obstruction to the flow of the stream, which is not found to be the case here.

"The right to use the water is limited to a use which will not affect the rights of the one against whom the right is claimed, any more than his rights were affected during the time the right was being acquired. The extent of the privilege acquired is determined by the actual user while the right was being acquired. But he is entitled to exercise the prescriptive right to its full extent, although some right had been acquired by grant before the adverse use was made. And, so long as he keeps within the limits of the right which he has acquired, he may make such changes in the manner of using his right as he desires." (2 Farnham, Waters & Water Rights, § 542.)

Where the law authorizes the building of a dam without the institution of any condemnation proceedings, and leaves to the owners of the lands thereby flooded only the remedy of seeking damages for such injury as they might suffer, a very different situation is presented. In a case arising under such conditions it was held that, the erection of the dam having necessarily been rightful by virtue of the statute, its maintenance could give rise to no presumption of a grant. (*Tinkham v. Arnold,* 3 Maine, *120.) But even that decision was criticized and disapproved in *Williams v. Nelson,* 40 Mass. 141.

The plaintiffs seek to invoke the principle that a right can not be acquired by prescription to maintain a dam which creates a public nuisance, but if there is anything in the evidence tending to bring them within the protection of that rule it is not covered by the pleadings and findings.

The judgment is affirmed.