S. F. Freeman, *as Guardian, etc., Appellee,* v. Rhoda
Funk, *Appellant.*

No. 17.043.

SYLLABUS BY THE COURT.

1. Quieting Title—*Adverse Possession—Trusts—Agreement to
Reconvey.* In 1888 the plaintiff's ward, in order to avoid the
payment of a note for one hundred and seventy-five dollars
given for a patent fence machine and to prevent his liability
thereon from becoming a lien on his homestead, conveyed the
latter to his wife. In a short time she reconveyed, and soon
thereafter departed this life. In the same year he deeded his
homestead to a daughter with· the understanding that she
should deed it back to him when the note should be out of the
way. He continued for more than fifteen years to occupy the
land, asserting and exercising dominion over it. When re-
quested to reconvey, the daughter, fearing that he contem-
plated remarriage, delivered to him a life lease made out on a
warranty deed blank, which he supposed for some time to be
a good deed of conveyance. In 1895 he was adjudged insane
and placed in an asylum, symptoms of mental unsoundness
having been manifested as far back as 1888. The daughter
was shown to have made numerous statements that she did
not pretend to own the land but intended to deed it back.
During the father's occupancy he placed valuable improve-
ments upon the land, rented portions of it at times and col-
lected the rent, and repeatedly offered it for sale. *Held,* that
the facts warranted a finding of adverse possession.

2. —— *Homestead—Fraudulent Conveyance.* The land being
the homestead of the grantor, his creditors could not have been
defrauded by his conveyance thereof.

3. —— *When Occupation Not Subservient.* Under the condi-
tions and circumstances indicated such occupancy was not in
subservience to the title of the grantee.

4. —— *Adverse Possession—Good Title.* The title fully vested
by such adverse possession for the statutory period can be
quieted as against the daughter in a suit by the father's
guardian.

5. —— *Adverse Possession — Affirmative Rights.* Such ad-
verse possession and the operation of the statute of limita-
tions created a title which can be used either offensively or
defensively.

Appeal from Mitchell district court. Opinion filed October 7, 1911. Affirmed.

*Charles L. Hunt,* and *Park B. Pulsifer,* for the appellant.

*J. E. Tice, Ira N. Tice, C. L. Kagey,* and *R. M. Anderson,* for the appellee.

The opinion of the court was delivered by

WEST, J.: In 1888 Hiram Moger, a resident of Mitchell county, deeded his homestead to his wife for the purpose of avoiding payment of a note for one hundred and seventy-five dollars given for a patent fence machine. During the same year the property was deeded back to him by his wife and he deeded it to his daughter, Rhoda Funk, the wife in the meantime having died. Not counting a temporary absence, he continued to live on the land until 1905, when he was adjudged insane and taken to an asylum. In the meantime he had claimed the land as his own, had put valuable improvements thereon, had rented portions of it and collected the rents, and had offered it for sale. About 1895, after having erected a house and barn on the place costing upwards of one thousand dollars, he desired the land deeded back to him by Mrs. Funk, but she, being fearful that he contemplated a second marriage, made out on a warranty deed form a life lease and delivered it to him. His guardian brought this action to settle for him the title to the land. The fourth, or third amended, petition was filed containing two causes of action, the first to quiet title and the second for specific performance of an alleged contract to reconvey. To this pleading a demurrer was interposed on the grounds that the second count did not state a cause of action, that the alleged cause was barred by the statute of limitations, and that several causes of action were improperly joined. This demurrer was overruled and an answer filed containing

a general denial and an admission that the defendant
·claimed to be the owner of the land, setting up the deed
·from her father, her life lease to him, a breach by the
father of its provision to pay taxes for the year 1907,
and that the second cause of action was barred, and
praying that her title be quieted. To this answer the
plaintiff filed an amended reply verified on information
and belief, containing a general denial and a claim that
the deed was secured through false representations and
undue influence when the grantor was mentally weak
and incompetent. A demurrer to this amended reply,
except the general denial, was overruled.

Upon the trial the court found that the deed was
procured by undue influence and that the defendant
held the same in trust for the benefit of her father, but
that his right to recover on this ground was barred;
but after making extended findings of fact the con-
·clusion was reached that the plaintiff had a right to
have his title quieted by reason of undisputed, quiet,
peaceable, exclusive and adverse possession since 1889.
The defendant appeals and presses forty-three as-
signments of· error, five relating to pleadings, twenty-
eight to the findings of fact and conclusions of law, and
ten to the reception of evidence.

Owing to the trial court's restriction of the case to the
issues joined upon the first cause of action, any errors
which may have occurred in reference to the various
pleadings can not materially prejudice the defendant.

We have examined the findings and the evidence,
·giving careful heed to the challenge made to many items
in the abstract of the appellee, and conclude that the
decision is well supported; and in view of the fact that
the cause was tried by the court without a jury we do
not find any evidence wrongfully admitted which could
by any fair reasoning be held to have led the court to
a wrong determination. There were, as usual, con-
flicting claims and conflicting testimony, but there is

abundant evidence in the record to warrant the finding that from 1888 until his removal to an asylum in 1905, Hiram Moger manifested symptoms of mental unsoundness which culminated in a mental and physical condition both pathetic and repulsive. Many statements testified to by various witnesses as having been made by the defendant afford sufficient basis for the finding that she took the deed with the understanding that the land was to be reconveyed upon the request of the father and that the purpose was merely to hold the title until the patent fence matter should be out of the way. The guardian's attorney testified that shortly before the suit was brought she said to him, among other things, "I have n't any interest in the land. I don't claim to own it," and that she was about to sign a statement to that effect when her husband interposed and objected.

Another witness testified that in a conversation between the Funks and Moger the latter said he had deeded the place to Mrs. Funk until he could get some trouble about the fence machine settled, when they were to deed it back to him, and that both Mr. and Mrs. Funk said it (the statement) was all right. Defendant herself, upon the stand, in answer to the question as to whether there was any talk or promise on her part that she would deed the property back at any time, answered "No, sir; no specified time." A brother-in-law testified that she told him she would make the deed back to Moger whenever Moger called for it. Another brother-in-law testified that she said she did not pretend to own the land, but that she would not deed it back to Moger because she wanted to keep him from disposing of it. She wrote a letter to her sister in which she stated that her father was mad about the deed to the land; that she had made him what the lawyer called a life lease; that a woman wanted to marry him to get the farm; "Father can use the land as long as he lives

and when he dies it will come to us children and all of us will get the same share. He can not deed it away."

Of course if she owned the land it would not descend to her father's heirs and the only way the others could get a share would be by deed from the owner.

The probate judge and others testified to. her state-ment that she did not pretend to own the land, or that the deed was to save the farm from the hands of parties who would take advantage of her father, and she in-tended to deed it back to him.

Considering the relation of the parties, the mental condition of the father, the subsequent conduct and statements of both, the continued unresisted acts and assertion of dominion and ownership for more than fifteen years, they fully justify the conclusion that a title by adverse possession had ripened, unless there be some rule of law preventing such conclusion.

It is asserted that the deed was made for the purpose of defrauding creditors, and therefore as against the grantor must be held good. Whatever the law may have been thought to be at that time it is certainly now settled that the property was the grantor's homestead and therefore no creditor could be defrauded by its con-veyance. (*Mull v. Jones,* 33 Kan. 112, 5 Pac. 388; *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558; *Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273; *Shattuck v. Weaver,* 80 Kan. 82, 101 Pac. 649.)

The defendant also urges that possession by the grantor must be presumed to be in subservience to the title of the grantee. This is no doubt true as a general proposition when there are no circumstances leading to a contrary conclusion, but when the grantor constantly and persistently for nearly seventeen years claims own-ership and exercises all the rights incident thereto and the grantee from time to time concedes the possession of only a paper title which is to be revested upon re-quest of the granto. the rule does not and can not ap-

ply. The authorities cited in favor of the general rule give support thereto but none of them involves conditions like those now under consideration. The leading case relied upon is *Dotson v. Railway Co.*, 81 Kan. 816, 106 Pac. 1045, which holds that such possession will not be considered adverse until the grantor explicitly renounces the title of the grantee or positively asserts a claim of title in himself which is brought to the attention of the grantee.

The evidence is abundant that the grantor all along asserted ownership in himself, and as already suggested the numerous statements made by the grantee, as testified to by various persons, amounted to repeated concessions that grantor's claim was rightful and that the shifting of the paper evidence of title back to the real owner was a mere formality.

Finally, it is earnestly insisted that to allow the grantor's title to be quieted on the ground of adverse possession for the statutory period is to change the rightful defensive nature of the statute into that of a wrongful offensive weapon.

Under the footnote "Statute no basis of claim for affirmative relief" in 25 Cyc. 983 the Kansas authorities are the only ones cited. Beginning with *Corlett v. Insurance Co.*, 60 Kan. 134, 55 Pac. 844, containing the phrase "It is a weapon of resistance, not of attack" (p. 135), similar expressions are found in *Thompson v. Greer*, 62 Kan. 522, 64 Pac. 48, *Burditt v. Burditt*, 62 Kan. 576, 64 Pac. 77, *Johnson v. Wynne*, 64 Kan. 138, 67 Pac. 549, *Gibson v. Johnson*, 73 Kan. 261, 84 Pac. 982, *Updegraff v. Lucas*, 76 Kan. 456, 94 Pac. 121, *Salter v. Corbett*, 80 Kan. 327, 102 Pac. 452, and *Capell v. Dill*, 82 Kan. 652, 109 Pac. 286. But in *Morris v. Hulme*, 71 Kan. 628, 81 Pac. 169, one who had deeded his land as security for another who had signed bonds for the appearance of the grantor's sons, sued for a reconveyance and alleged that the statute had run against the judgment on the bonds. This was held proper as show-

ing the limitation of defendant's liability on the judgments. In other words, the statute had created a condition of which the plaintiff could avail himself in an action for affirmative relief.

In *Gibson v. Johnson,* 73 Kan. 261, 84 Pac. 982, it was held that a mortgagor can not quiet title against the holder of the mortgage on the naked ground that. the mortgage is barred, following *Hogeboom v. Flower,* 67 Kan. 41, 72 Pac. 547. In the latter case Flower sued to quiet title against his mortgagee who set up the mortgage in defense, the answer showing that it was barred, and it was held that the plaintiff *could* quiet his title.

It was said that "a right of action thus barred is dead for all purposes while the bar continues; . . . it is as if no such right had ever existed." (p. 43.)

In *Updegraff v. Lucas,* 76 Kan. 456, 94 Pac. 121, it was held that injunction would lie against execution upon a dormant judgment, because the plaintiffs sought only "to hold what the law had already given them." (p. 459.) In *Trust Co. v. Jones,* 81 Kan. 753, 106 Pac. 1052, it was held that a tax deed good on its face, of record more than five years, the holders being in possession, vests in them an absolute title. It was further held, however, that when the fee-title holder sought to foreclose or extinguish the mortgage lien and made the tax-deed holders (who had an absolute title) defendants, while they could set up their tax deed they could not properly ask to have their title quieted. The tax-deed holders did in fact ask to have the title quieted, and it was said that they were "at least entitled to set up the tax deed by way of defense and to prove that it was a valid conveyance which defeated the lien of the mortgage, and a judgment to that effect is as far-reaching and effective as would be one which quieted their title as against a lienholder." (p. 755.)

The weapon-and-shield phrase is proper in many cases and under many circumstances, but it can not be of general application. Whenever possession and the

statute of limitations have created a fixed status vesting a good title against all adverse claimants such title constitutes a weapon offensive as well as defensive, and the fact that this condition has been brought about by the running of the statute does not change its character or the rights thereunder.   Certainly as to title by adverse possession this court is in line with practically all the courts of this country.

In *Wood v. M. K. & T. Railway Co.,* 11 Kan. 323, it was said:

"A mere trespasser, without color of right or title, who has been in the actual possession of real estate for fifteen years, claiming title thereto, becomes the owner of the property by virtue of the statute of limitations, if the property has been owned during all that time by some individual or individuals, and not by the United States."   (p. 348.)

In *Gildehaus v. Whiting,* 39 Kan. 706, 711, 18 Pac. 916, the following was quoted with approval from *Roots v. Beck,* 109 Ind. 472, 9 N. E. 698:

"When the bar of the statute becomes complete, however destitute of the color of title such occupancy may have been, to the extent that it was actual, visible and continuous, a title by prescription arises in the adverse occupant.   This title is in all respects equal to a conveyance in fee."   (p. 475.)

In *Anderson v. Burnham,* 52 Kan. 454, 34 Pac. 1056, it was held:

"Possession of land by an adverse occupant for more than fifteen years, which is actual, notorious, continuous, and exclusive, will give title thereto, although such possession is entirely destitute of color of title."   (Syl. ¶ 1.)

In *Liebheit v. Enright,* 77 Kan. 321, 94 Pac. 203, Enright sued to quiet title on the ground of adverse possession and also on the strength of a tax deed acquired from another.   It was there held that he could not be

required to elect and that he could maintain his action. It was said:

"There was no reason why the plaintiff, holding under adverse possession, should not fortify and protect his possession and title thereunder by procuring an outstanding tax title from another party, nor any reason why he might not set up both as against the defendants." (p. 322.)

The closing paragraph of the opinion is in these words:

"There being proof of adverse possession sufficient to give title and to sustain the finding and judgment of the court, it is unnecessary to consider the claim of right under the tax title." (p. 323.)

In *Manufacturing Co. v. Crawford,* 84 Kan. 203, it was again held that one claiming to be owner by adverse possession can maintain a suit to quiet his title.

1 Cyc. 1135 states that in America the doctrine is almost universal that possession for the statutory period not only bars the remedy of the holder of the paper title, but extinguishes his title and vests title in fee in the adverse occupant, and cites decisions from twenty-nine states, one territory and the United States supreme court, and proceeds:

"The title acquired by adverse possession is a title in fee simple, and is as perfect a title as one by deed from the original owners or by patent or grant from the government."

At page 1138 the rule is thus stated:

"Where the bar of the statute has become absolute, it is just as available for attacking as for defensive purposes and its availability in this respect will not depend upon the occupant continuing in the actual possession of the property. He may maintain ejectment against any person acquiring the possession from him by force or fraud, or who has made entry thereon during a temporary absence of the occupant, even though he be the true owner.

"It is likewise an incident of the completion of the

statutory bar that the title thus acquired will be quieted in the adverse holder on a bill in equity for that purpose, even against the holder of the legal title barred, and the defendants will be enjoined from asserting title to the premises from former ownership that has been lost."

To the same effect as the paragraph last quoted is *Jenkins v. Dewey,* 49 Kan. 49, 30 Pac. 114, which was a suit to quiet title against a husband who, not having joined with his wife in her conveyance more than fifteen years previously, claimed still to own an interest in the land which had been adversely possessed for the statutory period.

Mr. Justice Field, in *Sharon v. Tucker,* 144 U. S. 533, in holding that title can be quieted by one who has acquired it by adverse possession, said:

"As the complainants have the legal right to the premises in controversy, and as no parties deriving title from the former owners can contest that title with them, there does not seem to be any just reason why the relief prayed should not be granted." (p. 544.)

(See, also, *Brown v. Anderson,* 90 Ind. 93, holding that ejectment can be maintained; *Ind. Dist. of Oak Dale v. Fagen,* 94 Iowa, 676, 63 N. W. 456; and *Knight v. Knight,* 178 Ill. 553, 53 N. E. 306, holding that a grantee is bound to take notice of his grantor's possession and acts of ownership.)

Finding no errors in the rulings of the trial court materially prejudicial to the defendant the judgment is affirmed.