## McGOWAN v. CARLTON.

No. 19346.   Opinion Filed May 6, 1930.

Geo. N. Otey, for plaintiff in error.

Blanton, Osborn & Curtis, for defendant in error.

HALL, C. This was an action to quiet title and to cancel the deed of the record owner of the land. The foundation of plaintiff's cause of action was adverse possession; that is, he claimed absolute title of the premises by prescription, by reason of being in continuous, open, notorious, adverse, and hostile possession of the premises for more than 15 years. The essential facts are as follows:

J. S. Carlton, plaintiff in this action and defendant in error herein, purchased the land in question from one W. B. Dennis, who claimed the land through a deed of conveyance from Simon Graham, the allottee, an unrestricted Indian. Carlton, the plaintiff, went into possession of this land October, 1908. The Indian, Simon Graham, at the time he conveyed the land, was not of age, and he instituted an action to recover the land. He did not become of age until May 29, 1911. It seems that this action was compromised, and Graham, the allottee, gave a new deed to Dennis, plaintiff's grantor, to cure the defect in the title. Carlton, the plaintiff, still remained in adverse possession of the land, claiming the ownership at all times after the allottee became of age. On June 30, 1911, eight days before Simon Graham, the allottee, executed the second deed to W. D. Dennis, he executed a deed conveying this land to C. T. McGowan, the defendant in this action and plaintiff in error herein. The regularity or validity of this deed is not questioned. On February 28, 1927, nearly 16 years after the allottee became of age, and after the execution of the deed from the allottee to the defendant McGowan, plaintiff filed this action to quiet his title against McGowan, the grantee in this deed. The defendant's answer was in the nature of a general denial, and by way of cross-petition or counterclaim, setting up his aforesaid deed to the land. Trial was had, and judgment rendered in favor of plaintiff, quieting the title in plaintiff as against all claims of the defendant, including his deed by which he claimed title to the premises. The theory upon which plaintiff was granted relief was that he had obtained an indefeasible title to the premises by prescription—adverse possession with the necessary accompanying elements for a period of 15 years.

The defendant appealed, and seeks to reverse this case solely upon the doctrine announced and discussed at length in the case of Clark v. Duncanson, 79 Okla. 180, 192 Pac. 806, 16 A. L. R. 315. In other words, it is his contention that, as in this case, where plaintiff sues to quiet title and to cancel the deed conveying the legal title in the real estate, basing his cause of action on adverse possession, the owner of the legal title may answer by way of cross-petition or counterclaim, and that his cause of action to have his title quieted against plaintiff, and thereby overthrow plaintiff's title by prescription, is not barred by the statutes of limitation.

It must be conceded that the question presented is not without its difficulties when a conclusion is sought to be reached upon some clear and consistent principle of law. This is so because the subject-matter is so apparently interlocked with the equitable principle, that statutes of limitation are not often employed to establish affirmative or positive rights; and also by reason of our exceedingly general and somewhat indefinite statutory provisions relating to a counterclaim, its use, and the time in which matters may be set up thereunder without contravening the statutes of limitation. The adjudications on the subject, if not clearly analyzed, present a mass of hopeless confusion.

It is not our purpose here to attempt any extended discussion to the end of reconciling the apparent conflict and divergent views indicated in many of the judicial opinions regarding the operative force of a statute of limitation as a weapon of attack. It is sufficient here to say that nearly all, if not all, the courts, whenever the matter has been presented, have held that, where a person has been in adverse possession of land for the period designated by the statute, sufficient to bar an action for the recovery thereof, the title of the former owner passes to the occupant so that he can maintain an action to quiet title or in ejectment against such former owner. In other words, the statute of limitations, in this character of cases, is a weapon of offense as well as a shield of defense. The universal rule is set forth in 2 Corpus Juris, p. 251, as follows:

"A title acquired by adverse possession is available either for attack or defense, and

this is so whether the action is legal or equitable in, its nature."

To the same effect is the language of 1 Ruling Case Law, p. 690:

"The title so gained (by prescription) may be used by the disseisor either as a weapon or as a shield, as his necessities may demand, in any court or proceeding. The right, as well as the remedy, of the disseizee is destroyed."

Among the numerous cases, the following ones expressly declare and illustrate the above rule: Fagan v. Bach, 253 Ill. 588, 97 N. E. 1087, Ann. Cas. 1913A, 505; Rogers v. Day, 115 Mich. 664, 74 N. W. 190, 69 A. S. R. 593; Sharon v. Tucker, 144 U. S. 533; Craven v. Craven, 181 Ind. 553, 105 N. E. 41; Harrington v. Liscom, 34 Cal. 365; Freeman v. Funk, 85 Kan. 473, 117 Pac. 1024; McMann v. McMann, 123 Okla. 26, 252 Pac. 1093; and the recent case of Stolfa v. Gaines, 140 Okla. 292, 283 Pac. 563.

In several other Oklahoma cases, the rule has been followed and approved without any particular comment, but in the last-named case, Stolfa v. Gaines, the question was considered and discussed at length; and if the matter was ever an open question in this state, it may be said that it is now definitely settled.

On account of the confusion which has arisen regarding a statute of limitations as a means of attack, we deem it appropriate to quote briefly excerpts from a few of the adjudications on the point at issue. The opinion in the case of Freeman v. Funk, 117 Pac. 1024, supra, by the Supreme Court of Kansas, contains an exhaustive discussion of the cases relating to statutes of limitation, as conferring or denying positive rights. The Kansas cases, which are so pronounced in their adherence to the "sword and shield theory" of limitation statutes, were fully analyzed and discussed in that opinion. The writer of the opinion clearly shows that the Kansas courts have extended the doctrine beyond the limitations given it by any other court, yet, in that case, the court, following its own decisions, held "that adverse possession and the operation of the statute of limitations, created a title which can be used offensively or defensively."

In the body of the opinion, the court very aptly said:

"The weapon and shield phrase is proper in many cases and under many circumstances, but it cannot be of general application. Whenever possession and the statute of limitations have created a fixed status, vesting a good title against all adverse claim-

ants, such title constitutes a weapon offensive, as well as defensive; and the fact that this condition has been brought about by the running of the statute does not change its character, or the rights thereunder. Certainly as to title by adverse possession, this court is in line with practically all the courts of this country."

In the Illinois case of Fagan v. Bach, supra, on this point, the court said:

"The law formerly was that the statute of limitations could not be used as a sword, but could only be used as a shield. This view has now been very much modified, and a limitation title in this state may be used as a means by which to reclaim the possession of land as well as a means of defense."

In connection with defendant's contention that his answer and pleading was a counterclaim, it is only necessary to say that, under the holding of this court in the case of Hurst v. Hannah, 107 Okla. 3, 229 Pac. 163, and the recent case of Stolfa v. Gaines, supra, the defense pleaded was not a counterclaim. In the last-named case, Justice Andrews makes a valuable contribution toward a solution of this intricate and complicated subject. In most of the other cases, the courts, in distinguishing the case of Clark v. Duncanson, reached correct conclusions, though without any entirely clear reason for the distinction. It must be justly said here that the subject in many cases is one which makes it extremely difficult to set forth, in clear and concrete language, the reasons for the distinction between what is a counterclaim and what is not a counterclaim. On this point, in Stolfa v. Gaines, Justice Andrews, in speaking of title acquired by prescription, and the reason why a cross-petition or counterclaim of the defendant in setting up his extinguished record title, was not a "counterclaim" as against an action to quiet title based solely upon adverse possession, said:

"When the plaintiff instituted a suit to quiet his title as against the claims of the defendant, he did not, by so doing, surrender that title. It remained with him, subject to be defeated by any valid defense of the defendant. The defense offered was limited to an attack upon the guardianship proceedings. * * *

"The primary right of the plaintiff * * * was to hold the title to the real estate acquired by prescription, free from harassment by the assertion of title on the part of the defendant. Defendant's answer denied the title by prescription and asserted the invalidity of the guardian's deed. The record shows that no attempt was made to dispute the fact that the plaintiff had occupied the property for the period prescribed by the

laws of Oklahoma as sufficient to bar the right of the defendant to recover the property. * * * If the plaintiff had the title to the property by prescription, it was immaterial what action the court took with reference to the guardian's deeds or the guardianship procedure. The claim of the defendant, attacking the guardian's deeds and guardianship procedure, did not constitute a counterclaim against the claim of the plaintiff by prescription."

In the present case, under our law, Comp. Stat. 1921, sections 8552-8554, the plaintiff pleaded and proved an absolute indefeasible title in fee simple. This being true, would it not be an anomaly of the law to say that the holder of this indefeasible title must for all time avoid the courts of law or equity as he would a consuming flame, else have his title reduced to only a memory or a vision of the past? Suppose that, in the present case, after the period of limitations had run against the defendant, he had moved in on the premises and had taken possession of the land, claiming title under his deed against plaintiff's paramount title gained by adverse possession; in such event, if the limitations statute could not be used as a weapon of offense, what useful purpose would it serve?

The law does not operate in halves, and there could be no reason for the existence of a statute which by its terms, after its conditions have been fulfilled, vests absolute title, and then deny it of half of its force, which would clearly be the case if the person claiming title by prescription must await, as against the party claiming under a paper title, until he is attacked before he can reduce to a permanent record the evidence of his title, which until done must rest in parol.

Counsel for defendant in error, in their brief, recognize the confusion which has arisen over a misunderstanding over the apparently broad language used in the case of Clark v. Duncanson. In this connection, in their brief, they say:

"It may be remarked that the case of Clark v. Duncanson, supra, has been widely misconstrued by the trial courts, resulting in a babel of confusion in issues for trial. It may not be incumbent upon this court in the determination of this case to overrule or modify the doctrines of counterclaim laid down in said case, * * * but it may not be amiss for this court to limit and make more clear the language used in said case to the end that trial courts may not be misled into egregious errors by reason of the language used therein."

The Clark-Duncanson Case has had periodical and constant treatment since its appearance in current judicial history of this state. However, we can recollect no reported case where its doctrine has been misapplied; but evidently, as suggested by counsel, the case has produced no small amount of cross currents in an already billowy and raging sea of troubled waters. While the opinion regarding the particular matter before the court, in the case of Clark v. Duncanson, is fundamentally correct, and the decisions therein cited and quoted from at length announce sound principles of law, and were perhaps applicable to the particular facts and particular character of actions involved in those particular cases, we think the opinion and decision could have rested upon the fundamental proposition that statutes of limitation do not run against pure defenses. No doubt the opinion is correct in holding that the matter pleaded was a counterclaim; but that fact would not add to or take away from the principle that statutes of limitation cannot be interposed against strict defenses; that is, matters growing out of or directly connected with the primary claims of the adverse party. There is no doubt that the writer of the opinion in that case had a clear conception of what may or may not be included in a counterclaim under the Code, notwithstanding he very aptly says that the matter is far from being clear as to what the statute means to include. At that juncture, the author then compares the varied circumstances under which a counterclaim can be employed, to the "charms of Cleopatra"—noted for "their infinite variety."

The discussion under this section of the opinion, while it proved the point at issue, has engendered some confusion and misunderstanding, both as to what a counterclaim may include and the extent to which a statute of limitation can be employed to establish an affirmative right. The opinion perhaps is susceptible of granting too great a latitude in the use of a counterclaim in a pleading; and also, perhaps, too much prominence was given the expression that "statutes of limitation may be used as a shield, but never as a sword." We have just seen that while the "sword and shield theory" is a proper one in many cases, it is not a rule of universal application.

In Clark v. Duncanson, the plaintiff, who had obtained a tax deed to a tract of land, and after taking possession thereof, within one year filed his action against the defendant to quiet his title,—declaring on the alleged validity of the tax deed. The defendant could not answer, or did not answer

within one year from the recording of the tax deed, but filed his answer alleging the invalidity of the tax deed and asking to have it canceled, and asking to have the plaintiff ejected from the premises and his title quieted. The plaintiff in reply invoked the short statute of limitations, which requires that actions for possession must be brought within one year from the date of recording the tax deed. The court properly held in that case that defendant's answer and cross-complaint or counterclaim related back to the filing of the suit, in so far as limitations were concerned, and that as plaintiff based his action, not upon adverse possession or title by prescription, but upon the alleged validity of the tax deed, the tax deed was the subject-matter of the action, and that the defendant's answer and counterclaim was an attack upon the validity of this deed. The validity of the tax deed was the primary right in the case.

By way of parenthesis, it may be said that the opinion in the case at bar is not to be construed as modifying in anywise the holding of this court in the case of Nellis v. Minton, 91 Okla. 75, 216 Pac. 147, or the line of cases therein cited. The decision in the case of Nellis v. Minton is not governed by the rule which indisputably governs in the present case. The judgment is hereby affirmed.

BENNETT, TEEHEE, EAGLETON, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Adverse Possession," 2 C. J. §555, p. 254, n. 81, 82. "Limitations of Actions," 37 C. J. §2, p. 684, n. 7.