The bill in this cause was brought to determine the right of the defendants to maintain a dam in the Ramapo river. The complainant is the owner of much of the land in an island in the river below the site of the dam. Complainant contends that the dam is an illegal obstruction and that it so obstructs and diverts the water of the stream that there is no flow around one side of the island for at least part of the time. Defendants contend that the existence and operation of the dam are legal and that there is a right by prescription to its maintenance as it now exists.
At the hearing it appeared that in 1867 one Demarest constructed a dam across the river. This dam was rip-rap, built of logs, stones and planks. In 1895 the defendant *Page 344 
Wilkens acquired one bank of the stream at the end of the dam. Wilkens built a mill on the property and put up other buildings and from this time until 1927 he used the water from the dam. Prior to 1899 he had made some repairs and in the summer of 1899 he used one hundred and fifty barrels of cement to make the dam tighter. From then on until five or six years ago the top of the dam consisted of small stones which were occasionally knocked off or washed away, apparently by flood waters. These were replaced from time to time until about five years ago when the water washed around the end of the anchorage on the property of the defendant Klein on the opposite bank. Klein then put in a wing wall to prevent another washout. The dam was repaired and the small stones on the top were replaced by a coping of concrete blocks.
It appears from the testimony of Dr. Peter E. Demarest, who is the son of the original owner and who participated in the original construction of the dam in 1867, as well as that of other witnesses for the defendant, that there has been no inrease at any time in the height of the dam.
In 1928, defendants Vacca took over the property and have been operating a mill there ever since. Their use of the water from the dam was much greater than that of Wilkens and since their occupation substantially all the flow of the river has been discharged through the raceway of the dam. I do not consider that this additional use has affected the rights acquired by prescription under the use by Wilkens. Although Wilkens used the flow from the waters impounded by the dam for a period of only about ten hours a day, it was shown to my satisfaction that during the summer months this use took all the water impounded by the dam and that at such times there was no water flowing over the dam. Hence Wilkens' use of the dam for a period of more than twenty years was an assertion and exercise of the right to impound and divert the entire flow of the stream except at times of flood, and the right to the maintenance of the dam at the height at which it has been maintained through the entire period accordingly became fixed. *Page 345 
The principle of law applicable is that set forth by the court of errors and appeals in Carlisle v. Cooper, 21 N.J. Eq. 576
(at p. 595):
"As a general rule the height of the dam when in good repair and condition, including such parts and appendages as make its efficient height in its ordinary action and operation, fixes the extent of the right to flow, without regard to fluctuations in the flowage which are due to accidental causes, such as want of the usual repairs, or the variation in the quantity of water in the stream in times of low water or drought, or, in the pondage of the dam by its being drawn down by use."
A decree dismissing the bill will be advised.