### SMITH v. BEAM et al.

No. 23709.    Jan. 21, 1936.

Rehearing Denied March 24, 1936.

E. E. Blake, for plaintiff in error.

John Adams and Harry Blake, for defendants in error.

CORN, J. The parties will be referred to as they appeared in the trial court, the same as the order herein.

This action was brought by the plaintiff, Del E. Smith, against three coterminous landowners and two township boards for damages and to abate structures erected by the defendants in their individual and corporate capacities which diverted water and held water upon plaintiff's land over that of natural conditions.

The case was tried to the court, and judgment was for the defendants.

The prayer of plaintiff's petition for relief against the defendant Harry Beam was that he be restrained and enjoined from continuing and maintaining the earthen levee from the southwest corner of Beam's farm in section 30 eastward along the south line of said quarter section, and that Beam be required to raze the said levee and restore the lay of the ground to its natural condition.

The substance of Beam's first defense is that he constructed a small dam or dyke about four feet high at the westerly end, and about three feet high at the easterly end, extending from his southwest corner east 400 feet, and that paralleling this dam or dyke, and immediately by it on the south, he constructed a large ditch of sufficient capacity to carry off the surface and storm waters which come from the west on the north side of the public highway, between the Fleming farm and the Goode farm; that 400 feet east of his southwest corner there is a deep natural drain from six to ten feet deep, coming from the south-

west across the northwest part of plaintiff's farm, thence across the southwest part of Beam's farm, emptying into Deer creek on Beam's farm 800 or 900 feet from his southwest corner; that the ditch which Beam constructed on the southwest corner of his farm to the north side of the road, east approximately 400 feet, carried the storm and surface waters into said natural branch.

Beam denied that his said dam or dyke caused either the surface waters or storm waters to overflow any part of plaintiff's farm more than the overflow on said farm prior to the erection of the said dyke, and further alleged that he had maintained said ditch in its present condition, and that said ditch had taken care of the surface and storm waters and emptied the same into the draw about 400 feet east of his southwest corner.

Beam's second defense was that both his dyke or dam and his ditch immediately south thereof had been maintained by him in their present location and condition adversely and continuously for a period of over 30 years, and therefore, if the building of said dyke or dam and of said ditch caused the northwest part of plaintiff's farm to be overflowed by storm waters more than said lands would have been overflowed had not said dyke and ditch been constructed, the defendant Beam, by the continuous maintenance of said dyke or dam and of said ditch for a period of over 15 years, continuously last past, and for a period of approximately 30 years last past, had acquired the right by prescription to continue to maintain said dyke or dam and said ditch, and that plaintiff is barred by the 15-year statute of limitations from maintaining said action against said defendant Beam to abate said dyke and dam, or for damages.

Plaintiff's petition prayed for judgment against the defendant Harry Fleming restraining and enjoining him from maintaining the artificial ditch leading the waters from the north and west of his land into the highway between the lands of the defendant Fleming and the lands of the defendant Goode, and requiring him to restore said storm waters from the northwest to their natural flowage eastward and northeastward across Fleming's land, and across the section line between the Fleming and Beam farms.

Fleming's first defense was that his remote grantor, one J. M. Koeppel, while the owner of said farm, cut said artificial ditch

from the northwest to the southeast, across part of said farm, leading the storm waters flowing down from the northwest, out of the natural flowway, and that said waters flow through said artificial ditch from a point about 700 feet north of the south line of said Fleming farm, southeasterly across the center of said farm to the roadway on the south side thereof, entering an artificial ditch on the south side of said roadway and, when reaching the north side of said roadway, are conducted to the east along the south side of the Fleming farm to the southeast corner of said farm, thence east through a culvert under the north and south road, and thence into an artificial ditch which was dug and maintained about the same time, and over 30 years ago, by the defendant Harry Beam, and through said ditch said waters flow into a deep natural drain about 440 feet east of the southeast corner of the Fleming farm. And said defendant, therefore, denied that the waters coming into the roadway between the Fleming and Goode farms from said artificial ditch caused any increased discharge and flow of the storm waters across the plaintiff's farm.

Fleming's second defense was that, if said artificial ditch across his farm does increase the discharge of storm waters across plaintiff's farm, plaintiff, at this time, is barred by the 15-year statute of limitations from complaining of said increased flow of waters; that said artificial ditch on said Fleming farm and the drainage ditch on the north side of the roadway on the south side of the Fleming farm have been in their present condition, maintained by said Fleming and his immediate and remote grantors, in conjunction with the township board of Spring creek township and in conjunction with Harry Beam, openly, adversely, and continuously for a period of over 30 years last past, and the plaintiff therefore is barred by the statute of limitations from maintaining his action for damages or for injunction.

Plaintiff's petition prayed for judgment against the defendant township trustees of Spring Creek township, prohibiting and enjoining them from maintaining the raised roadway between the Fleming and Goode farms, and requiring said board of trustees to raise the said roadway and restore the same to a state of nature, and requiring them to remove the artificial elevation of said roadway and to restore the same to the natural level of said land, or to compensate plaintiff for damage by increased burden of waters diverted by said roadway onto and across said land.

The first defense of the board of trustees of Spring Creek township alleged that they and their predecessors in office, on behalf of the Spring Creek township, had maintained an east and west highway between sections 25 and 36, Spring Creek township, and in maintaining said roadway had graded the same and had raised the center thereof in places slightly above the adjoining land; that on each side of said road there have been, at all times for more than 15 years last past, drainage ditches to carry the waters eastward and toward the common corner of the farms belonging to the plaintiff and to the defendants Harry Beam, Harry Fleming, and S. A. Goode; that the ground slopes to the eastward at least to the point of the common corner, and from there 400 feet further east to the deep natural drain the land is about level; that on the north side of said public road the said trustees have not only kept said drainage ditch open, but have constructed a culvert or underpass for said waters east under the north and south roads at said common corner, and from thence east 400 feet their codefendant, Harry Beam, had maintained an ample ditch to carry said waters 400 feet east from the common corner into the natural drain; that on the south side of said east and west road they and their predecessors in office have also maintained an ample drainage ditch from the high land on the west, east to the northwest corner of plaintiff's farm; but when the waters come from the west down said drainage ditch leaving the roadway at the northwest corner of plaintiff's farm, there is no ditch on east 400 feet to said deep natural drainway; that said 400 feet of road is under the charge of their codefendants, the trustees of Seward township, and said trustees have failed and neglected to grade the road between the plaintiff's farm and Beam's farm, and have failed and neglected to construct a drainage ditch on the south of said roadway along the northwest part of plaintiff's farm to take care of the waters coming down the south side of the road on the north side of the S. A. Goode farm; that some of the waters may overflow the small tract in the northwest corner of plaintiff's farm, due to the fact that plaintiff would not permit the trustees of Seward township to construct a drainage ditch on the south side of the road from the northwest corner of plaintiff's farm east 400 feet to the deep natural drainway; and that the plaintiff had threatened said Seward township board that

he would sue for damages if they did construct a ditch on the south side of the road on the northwest corner of his farm east 400 feet to the deep natural drainway; and that, therefore, any damage to the northwest part of plaintiff's farm, due to the overflow of said waters, was because of the negligence of the trustees of Seward township, induced by said threats of plaintiff, and that plaintiff, therefore, could not recover his said damages, due to his own fault and his own threats.

As a second defense the Spring Creek township trustees pleaded the 15-year statute of limitations as a bar to the plaintiff's claim for damages and for injunctional relief, alleging that for the 30 years last past they and their predecessors in office have continuously maintained the east and west road between the Harry Fleming farm and the S. A. Goode farm in the condition it was at the time said answer was filed, and if the maintaining of said road in said condition was, in the beginning, a damage to plaintiff's farm and caused an increased overflow of surface and storm waters, the plaintiff cannot at this time maintain his action against these defendants, for the reason that he is barred by the 15-year statute of limitations, and that said Spring Creek township, as a municipal corporation, has acquired the right, by prescription, to maintain said road in its present condition, because for more than 15 years and for at least 30 years said road has been graded as it is at the present time, and ditched to each side thereof as it is at the present time, and if said road, so maintained, has caused the northwest corner of plaintiff's farm to receive more water than by nature it would have received, plaintiff is barred at this time from complaining of said increased flow of waters.

Plaintiff's petition prayed judgment against the defendant S. A. Goode enjoining him from using further the levees or dykes or diverting dams on his lands that will interfere with the natural flow of waters thereon, and from longer maintaining the levees, dams, and dykes heretofore constructed thereon, and compelling him to raze and remove the same and restore the aforesaid lay of said lands to the state of nature, and from interfering with the natural flow of said waters across his lands, and prohibiting and preventing him further from diverting the waters from his lands across plaintiff's lands.

S. A. Goode did not plead the statute of limitations because the two small dykes on

his farm were placed there within the last 15 years. His defense was a denial that these small levees or dykes of dirt diverted the flow of water from the north and northwest from the natural outlet to the northeast across his farm onto the Ziegelgruber farm and onto the plaintiff's farm.

The answer of the trustees of Seward township was a general denial and a further plea of bar by the statute of limitations.

This court has held that title acquired by prescription is available, either as a defense or in attack, and whether in a legal or equitable suit. This was the holding in the case of McGowan v. Carlton, 143 Okla. 106, 288 P. 338; and in Stolfa v. Gaines, 140 Okla. 292, 283 P. 563.

In the case of McGowan v. Carlton, supra, in the first paragraph of the syllabus the proposition is stated by this court as follows:

"The title to real property acquired by prescription or adverse possession is respected in courts of equity, as well as in courts of law; and the title so acquired is available either for attack or defense; and this is so whether the action is legal or equitable in its nature."

In the case of Whitehair et al. v. Brown, 80 Kan. 297, 102 P. 783, the Supreme Court of Kansas, in the first paragraph of the syllabus, held:

"Where a dam across a stream has been maintained for 15 years—the period of limitation for actions to determine an interest in real property—the right to its continued maintenance cannot ordinarily be assailed by upper riparian landowners."

The Supreme Court of New Jersey, in the case of Fairlawn Manor Homes Co. v. Wilkens, 107 N. J. Eq. 343, 152 Atl. 470, held:

"A right to dam a stream may be acquired by prescription.

"Evidence held to show that the dam in question had been maintained for more than 20 years at its present height and accordingly that a prescriptive right exists in the owners of the dam."

The Supreme Court of Kansas in the case of Wallace v. City of Winfield, 96 Kan. 35, 149 P. 693, in the first paragraph of the syllabus states the law as follows:

"One who builds and maintains a dam may acquire flowage rights by prescription, and if the dam has been maintained for more than 15 years a presumption of a grant or of consent by the upper riparian owners arises and gives the owner of the dam a right to its continued maintenance,

412

to the extent to which the right has been enjoyed for the period of prescription."

The evidence in this case is conflicting, and was therefore a matter to be decided by the trial court.

"In an equitable action the presumption is in favor of the finding of the trial court, and it will not be set aside unless clearly against the weight of the evidence." Thompson v. Renfrow, 148 Okla. 8, 296 P. 404; Reynolds v. Reynolds, 148 Okla. 13, 296 P. 962; Weeks v. Davis, 148 Okla. 230, 298 P. 267.

A part of the judgment of the trial court is as follows:

"And after the argument of counsel, and being fully advised in the premises, the court finds the issues in favor of the defendants, and against the plaintiff, and orders plaintiff's petition dismissed at the cost of the plaintiff, to which action of the court the plaintiff excepts."

In a civil action, triable to the court, where the finding of the court is general, such finding is a finding of each specific thing necessary to sustain the general finding; and where such finding is not clearly against the weight of the evidence, the judgment will be affirmed.

We do not feel it would serve any useful purpose to discuss the evidence at length, as we are bound to follow the long established rule of law, where such finding of the trial court is not clearly against the weight of the evidence, the judgment will be affirmed.

The judgment of the trial court is, therefore, affirmed.

McNEILL, C. J., and BAYLESS, WELCH, and GIBSON, JJ., concur.